Mary E. HASTINGS and Karen E. Hastings, by her next friend, Mary E. Hastings, Plaintiffs and Appellants,

v.

JAMES RIVER AERIE NO. 2337—FRATERNAL ORDER OF EAGLES, a corporation, et al., Defendants and Appellees.

Civ. No. 9247.

Supreme Court of North Dakota.

Nov. 5, 1976.

MacKenzie & Jungroth, Jamestown, for plaintiffs and appellants; argued by James R. Jungroth, Jamestown.

Hjellum, Weiss, Nerison, Jukkala & Vinje, Jamestown, for defendant and appellee, James River Aerie No. 2337—Fraternal Order of Eagles, a corporation; argued by Russell G. Nerison, Jamestown.

Vogel, Vogel, Brantner & Kelly, Fargo, for defendant and appellee, Ernest DeNault Robertson Post No. 14—American Legion; argued by Mart R. Vogel, Fargo.

ERICKSTAD, Chief Justice.

In this case, Mary E. Hastings, as the wife of Norman R. Hastings, and Karen E. Hastings, the daughter of Mary and Norman, through her mother as next friend, bring an action under our Dram Shop Act, Section 5–01–06, N.D.C.C. Their action is to recover damages from three licensed liquor dealers in the City of Jamestown,

North Dakota, for their sale or gift of alcoholic beverages to Mr. Hastings when he was intoxicated. They allege that this caused him to be convicted of the crime of second degree murder in the shooting death of one Evangeline Opp, resulting in his commitment to the State Penitentiary for seven to ten years.

In paragraph eight of the complaint, Mrs. Hastings asserts that she was deprived of the support, society, companionship, counsel, and guidance of her husband to her damage in the amount of $250,000, and that her daughter, Karen, was deprived of the support, advice, and counsel of her father, to her damage in the amount of $250,000.

In paragraph nine of the complaint, it is asserted that some of the damage suffered by Mary Hastings for the loss of support, society, companionship, counsel, and guidance of her husband will be permanent, and that some of the damage suffered by Karen E. Hastings, because of the lack of support, advice, and counsel of her father, will be permanent.

Prior to answering the complaint, one of the defendants, James River Aerie No. 2337, Fraternal Order of Eagles, moved to strike the words "society, companionship, counsel and guidance" from that part of paragraph eight of the complaint relating to Mrs. Hastings' claim, and to strike the words "advice and counsel" from that part of paragraph eight of the complaint relating to Karen's claim. In addition, the Eagles moved to strike all of paragraph nine of the complaint.

It is from the trial court's order granting the motion to strike that the Hastings appeal to this court.

In addition to the appeal, three questions have been certified to this court pursuant to Chapter 32-24, N.D.C.C. Those questions are whether, under the Civil Damage Act, Section 5-01-06, N.D.C.C., (1) a wife can recover for the loss of consortium, (2) a child can recover for the loss of counsel and guidance before majority, (3) a child can recover for the loss of counsel and guidance after majority.

The statute under which recovery is sought reads:

"Every wife, child, parent, guardian, employer, or other person who shall be *injured in person, property or means of support* by any intoxicated person, or in consequence of intoxication, shall have a right of action against any person who shall have caused such intoxication by disposing, selling, bartering, or giving away alcoholic beverages contrary to statute for all damages sustained." § 5-01-06, N.D.C.C. (Emphasis added.)

At English common law, a husband's right to recover for the loss of his wife's consortium was considered a property right. *Foot v. Card,* 58 Conn. 1, 18 A. 1027, 1028 (1889); 3 W. Blackstone, Commentaries * 143. Blackstone uses the term "property" in the same context in which we use the word "right". The court in *Foot v. Card, supra,* uses the two words interchangeably. *Foot* was written in 1889, one year prior to the adoption of North Dakota S.L.1890, Ch. 110, Section 15, which is the source of the phrase "person, property, or means of support" found in Section 5-01-06, N.D. C.C. Several other cases of that approximate time period viewed consortium as a property right, many of them quoting or citing *Foot* with approval. *E.g. Lockwood v. Lockwood,* 67 Minn. 476, 70 N.W. 784, 785 (1897); *Price v. Price,* 91 Iowa 693, 60 N.W. 202, 203 (1894). *See Iszler v. Jorda,* 80 N.W.2d 665 (N.D.1957); *Larisa v. Tiffany,* 42 R.I. 148, 105 A. 739 (1919); *Warren v. Warren,* 89 Mich. 123, 50 N.W. 842 (1891); *Jaynes v. Jaynes,* N.Y., 39 Hun. 40 (1886).

We conclude that a *right* of consortium is *property* under Section 5-01-06, N.D. C.C.

It is argued, however, that at English common law a wife could not recover damages for the loss of a husband's consortium, and, accordingly, injury to property does not include a wife's right to recover for loss of consortium under the Dram Shop Act.

What does loss of consortium involve? What was the rule at common law and has the rule been changed, and, if so, is there any trend to be noted?

Because the best general analysis of this subject is contained in 36 A.L.R.3d 900, we quote extensively therefrom for background, commencing at page 904.

"Before 1950, the year in which *Hitaffer v. Argonne Co.* was decided, the prevailing view in almost all states was that a wife did not have a common-law cause of action for loss of her injured husband's consortium due to the negligence of a third person. Although the *Hitaffer Case* was later overruled on another point, it is recognized as the leading case in which it was held that a wife has a common-law action against a negligent tortfeasor for loss of her husband's consortium. The courts in a number of other jurisdictions have since adopted the reasoning of the *Hitaffer Case,* overruling their earlier decisions to the contrary. On the other hand, a number of courts have rejected the reasoning of the *Hitaffer Case* and have refused to permit the wife to recover for loss of consortium.

"The principal reasons for denying the wife a cause of action for loss of her husband's consortium due to the negligence of a third person are (1) It would result in double recovery of damages; (2) the loss is too indirect and remote from the wrongful act; (3) it would result in a multiplicity of actions by other persons, such as children, relatives, business partners, and other persons who are either related to or dependent upon the injured person; and (4) if the law on this point is to be changed, it is a matter that can best be handled by the legislatures rather than the courts.

"The argument that recovery by the wife for loss of consortium would result in double recovery of damages arises from a lack of clarity as to what the term 'consortium' means. Most courts agree that consortium includes such items as love, companionship, affection, society, comfort, solace, support, sexual relations, and services. It has been argued that since the injured husband is entitled to damages for impairment of his capacity to work, to enjoy life, and to engage in the so-called normal pursuits of life, to allow the wife to recover damages for loss of her husband's services would result in double recovery. Although the courts that have given the wife a cause of action for loss of consortium recognize the danger of double recovery, they point out that the matter can be solved by limiting the wife's recovery to the 'nonpecuniary' or 'sentimental' aspects of consortium, and that any damages awarded to the wife for loss of her husband's services can simply be deducted from the award.

"The courts which allow the wife to recover for loss of consortium reject the argument that recovery should be denied because the loss is too remote and indirect, pointing out that if the husband is allowed to recover for loss of his wife's consortium, the wife's loss of her husband's consortium is no more indirect or remote.

"Most of the courts that have refused to permit the wife to recover for loss of her injured husband's consortium do so on the ground that she had no cause of action at common law, and if the common law is to be changed, it is a matter of such far-reaching public policy that it can best be changed by the legislature. These courts point out, for example, that if recovery were allowed, it would raise additional questions concerning the distribution of damages, whether the damages belong to the wife alone or to the husband and wife jointly, whether the actions should be joined, and whether other members of the injured person's family should also be given a cause of action for loss of companionship, society, affection, and the like. The courts that allow recovery, on the other hand, point out that since the law denying the wife the right of recovery for loss of consortium was judge-made, it can be judge-destroyed.

\*　　\*　　\*　　\*　　\*　　\*

"In a number of states, the rule is that the husband may recover damages for loss of his injured wife's consortium, but the wife may not recover for loss of her injured husband's consortium. There is a

split of authority on the question whether such a rule is unconstitutional on the ground that it deprives the wife of equal protection of the law." 36 A.L.R.3d 900, 904–906.

What is the significance of all this? Are we restricted in this case to applying the ancient rule of common law that only a husband could recover for the loss of a spouse's consortium? We think not. We see from the annotation just quoted that the common law as to consortium has evolved to meet changing times and conditions. We indicated this was a proper function of the common law in *Lembke v. Unke,* 171 N.W.2d 837, at 843, where we quoted from a Kansas decision which quotes Justice Cardozo as saying:

" * * * The inn that shelters for the night is not the journey's end. The law, like the traveler, must be ready for the morrow. It must have a principle of growth." *Hoffman v. Dautel,* 189 Kan. 165, 368 P.2d 57, 59 (1962).

█ Our Dram Shop statute, Section 5–01–06, N.D.C.C., *supra,* upon which the complaint in this action is based, employs words that had certain meaning at common law. As previously noted, the right to consortium, a property right available only to a husband, was later extended to the wife by a substantial number of courts of this country. Is the right to recover for the loss of consortium now encompassed in the Dram Shop Act? We think it is for the husband, and if so, it must also be for the wife. If it were not, the Act would surely violate Section 20 of our State Constitution which prohibits granting privileges to any citizen not granted to all and the Fourteenth Amendment to our United States Constitution which prohibits the State from denying to any person within its jurisdiction the equal protection of the laws.

In overruling a trial court opinion holding that a wife could not bring an action for the loss of her husband's consortium, the Court of Appeals of Ohio said:

"If a statute were to affirmatively create such a right in a husband and yet deny it to a wife, such a classification based on sex alone would violate Article I of the Constitution of Ohio and the Fourteenth Amendment to the Constitution of the United States. The common-law distinction between husband and wife in regard to consortium is equally based upon an unreasonable, discredited concept of the subservience of the wife to her husband. The courts should not perpetuate in the common law a discrimination that could not constitutionally be created by statute." *Leffler v. Wiley,* 15 Ohio App.2d 67, 239 N.E.2d 235, 236 (1968). *See* Annot. 36 A.L.R.3d 900, 925 (1971). *See also* Court of Common Pleas decisions of Ohio: *Clem v. Brown,* 3 Ohio Misc. 167, 207 N.E.2d 398, 401–402 (1965), and *Umpleby v. Dorsey,* 10 Ohio Misc. 288, 227 N.E.2d 274 (1967). For a discussion of these cases, *see* 36 A.L.R.3d 900, 925.

A husband's right to recover for loss of consortium is recognized in our State (*Milde v. Leigh,* 75 N.D. 418, 28 N.W.2d 530 at 538.), and a wife's similar right has previously not been recognized in our State. *See Milde v. Leigh, supra,* at 28 N.W.2d 534.

█ Lest it should be argued that there is a constitutional or rational basis for distinguishing between a husband's right to consortium and a wife's similar interest, we think what is said in a Federal District Court Opinion for the Northern District of Illinois is significant.

"No reason is apparent which would support the diverse treatment accorded husbands and wives in Indiana on this issue. It might be suggested that the process of history has carved out a definition of women's rights based upon a rationale which has ceased to exist, but which is based upon firm precedent.

"We are aware of no principle which protects a longstanding axiom of law from being invalidated when it is antiquated and offends some portion of the constitution as currently interpreted by the Supreme Court. In holding that the common law of Florida has been abrogated by the Fourteenth Amendment, and that a woman may sue her husband despite common law doctrine to the con-

trary, a South Carolina Federal District Court recognized that married women are 'entitled to the same protection of the law as other individuals regardless of ancient provisions of the common law.' *Alexander v. Alexander,* 140 F.Supp. 925, 928 (W.D.S.C.1956). That women cannot sue for loss of consortium is not excusable because based upon an historical legal doctrine which viewed a woman as her husband's chattel or 'servant.' Some positive justification is required. Nothing persuasive is offered by any of the cases which deny her this right.

\* \* \* \* \* \*

"Nevertheless, in matters involving economic interests, it must clearly be shown that the challenged classification is without any reasonable basis, and is clearly arbitrary, before it can be upset on equal protection grounds. \* \* \*

\* \* \* \* \* \*

"In the instant case, we have already determined that the denial of the wife's right of action can no longer be explained on any rational basis. It is clearly no more than a relic of an ancient era in the law. Where no reasonable justification for its existence other than longevity can be offered, and defendant and the Indiana courts offer no other, it must be considered to be an arbitrary classification." *Karczewski v. Baltimore and Ohio Railroad Co.,* 274 F.Supp. 169, 175, 178 (1967).

*See also Owen v. Illinois Baking Corp.,* 260 F.Supp. 820, 821–822, 36 A.L.R.3d 900, 924 (1966).

Our view that to deny a wife the right to recover for the loss of a husband's consortium while allowing a husband to recover for the loss of a wife's consortium would be a denial of the equal protection of the laws is consistent with our opinions in *Johnson v. Hassett,* 217 N.W.2d 771 (N.D.1974), where we held our guest statute unconstitutional

as violative of Sections 11, 13, and 20 of our State Constitution, and *In re Estate of Jensen,* 162 N.W.2d 861 (N.D.1968) where we held a certain inheritance statute violative of Section 1 of the Fourteenth Amendment to the United States Constitution and Section 20 of the North Dakota Constitution.

Since in *Jensen* we were dealing with a statute which had its origin in English common law, we think what we said there is significant:

"This statute, which punishes innocent children for their parents' transgressions, has no place in our system of government, which has as one of its basic tenets equal protection for all." *In re Estate of Jensen,* 162 N.W.2d 861, 878 (N.D.1968).

Notwithstanding that the United States Supreme Court in *Labine v. Vincent,* 401 U.S. 532, 91 S.Ct. 1017, 28 L.Ed.2d 288 (1971), later upheld a statute similar to the one we struck down in *Jensen,* we are of the opinion that Section 20 of our State Constitution still sustains *Jensen* and gives life to this opinion today. It is also comforting to note that the legislature, by action following *Jensen,* sustained us in our view. S.L. 1969, Ch. 466, Sec. 1, amends 56–01–05, N.D.C.C.

Although we are not asked to determine in this case whether Mr. Hastings has a right to bring an action on his own behalf under the "other person" phrase of Section 5–01–06, N.D.C.C., since it would appear that under the majority view such a phrase does not include the "intoxicated person" (*E.g., Federated Mutual Imp. & H. Ins. Co. v. Dunkelberger,* 172 N.W.2d 137 (Iowa 1969); *Randall v. Village of Excelsior,* 258 Minn. 81, 103 N.W.2d 131 (1960); *Malone v. Lambrecht,* 305 Mich. 58, 8 N.W.2d 910 (1943).), we find it unnecessary to concern ourselves over possible double recovery from failure to require joinder of the intoxicated person. *See* 36 A.L.R.3d 900, 906, Section 2(b).[1]

---

1. According to John W. Wade, Professor of Law and Reporter for the Restatement of Torts, Second, published by the American Law Institute, Tentative Draft 14 was adopted as a final draft by the Institute in 1969. The final version omits Section 695 and amends Section 693 to cover both spouses. When published, it will read as follows:

■ Before we may conclude this opinion, we must consider questions two and three, referred to earlier herein, involving the daughter's right to sue for loss of counsel and guidance. We hold that she may not sue for these losses under the present state of our law. What we say here should not be construed to prohibit recovery where a parent dies and recovery is allowed under the Wrongful Death Act, Ch. 32–21, N.D. C.C. See *Dahl v. North American Creameries,* 61 N.W.2d 916 (N.D.1953).

It is interesting that the writer of a rather comprehensive note on a "Child's Action for Loss of Support" cites ten reasons why such an action short of specific legislation providing for same should not be allowed.

"Counsel arguing against extension of a cause of action to a child for loss of parental support, attention, training, and affection may wish to refer to the following considerations which may be cited against such recognition, namely, (1) the absence of any enforceable claim on the child's part to the parent's services, (2) the absence of precedents, (3) the uncertainty and remoteness of the damages involved, (4) the possible overlap with the parent's recovery, (5) the multiplication of litigation, (6) the possibility of upsetting settlements made with parents, (7) the danger of fabricated actions, (8) the increase in insurance costs, (9) the public policy expressed in some jurisdictions in the enactment of 'heart balm' statutes, and (10) family problems arising from segregated awards to children." 69 A.L.R.3d 528, 532. (Footnote omitted.)

Without engaging in discussion of each of those considerations, and without necessarily agreeing with all of them, we think it sufficient to refer to the discussion in detail of those grounds for denial of such an ac-

"§ 693. ACTION BY ONE SPOUSE FOR HARM CAUSED BY TORT AGAINST OTHER SPOUSE.
"(1) One who by reason of his tortious conduct is liable to one spouse for illness or other bodily harm is subject to liability to the other spouse for the resulting loss of the society and services of the first spouse, including impairment of capacity for sexual intercourse, and for reasonable expense in-

tion, commencing on page 537 and ending on page 544 of cited note.

■ We dispose of the contention that to disallow the child's action is to deprive it of the equal protection of the laws by stating that we believe there is a rational basis for distinguishing between an action for the loss of consortium of a husband or wife and that of an action by a child for the loss of counsel and guidance of a parent. See 69 A.L.R.3d 528, 544–545.

For the reasons stated herein, the order granting the motion to strike is reversed in part, with the answer to the first certified question being yes and the answers to the second and third certified questions being no. The case is remanded for trial accordingly.

VOGEL, PAULSON and SAND, JJ., concur.

PEDERSON, Justice (concurring specially).

By a stipulation not signed by any party to this suit, the attorneys attempt to give this court jurisdiction to consider questions certified by the trial court seven days after it lost complete jurisdiction over the case by an appeal taken from an order striking a provision from the complaint.

I would refuse to answer the certified questions because, by answering, we are in effect rendering an advisory opinion. See *Scranton Grain Co. v. Lubbock Mach. & Supply Co.,* 175 N.W.2d 656 (N.D.1970), and Chapter 32–24, NDCC.

With regard to the appeal itself, it asks that we review an order that in no way comes within any of the seven categories of orders that may be carried to the Supreme Court under § 28–27–02, NDCC.

curred by the second spouse in providing medical treatment.
"(2) Unless it is not possible to do so, the action for loss of society and services is required to be joined with the action for illness or bodily harm, and recovery for loss of society and services is allowed only if the two actions are so joined." Publication of Volume III including the amended version of Section 693 is expected in February of 1977.

As we said in *Saetz v. Heiser,* 240 N.W.2d 67, 70 (N.D.1976), "when matters have been fully researched, briefed and argued, and involve the merits of a question which is of significant concern, this court will decide the case on its merits rather than remanding for technical corrections * * * ." Therefore, I reluctantly concur in the results without being sure that, if the case had been completed to judgment before the appeal, there may have been an entirely different argument, especially on the constitutional question raised. It is possible that we may have knocked out husband recovery for loss of consortium instead of extending such recovery to wives.