Bonnie JACOBS and Kevin Grosz, each individually and as natural parents and guardians for Jennifer Grosz, a minor child, Plaintiffs and Appellants,

v.

ANDERSON BUILDING COMPANY, a North Dakota corporation, and Herman Eggers, and Inclinator Company of America, Defendants and Appellees.

and

Herman EGGERS, Defendant, Third Party Plaintiff and Appellee,

v.

DAKOTA ACADEMY FOR THE ARTS, Third Party Defendant and Appellee.

Civ. No. 870222.

Supreme Court of North Dakota.

June 30, 1988.

Petition for Rehearing Oct. 18, 1988.

Lundberg, Nodland, Lucas, Schulz & Lervick, P.C., Bismarck, for plaintiffs and appellants; argued by Thomas A. Dickson.

Zuger, Kirmis, Bolinske & Smith, Bismarck, for appellee Herman Eggers; argued by Michael G. Fiergola. Appearance by Patrick J. Ward.

Pearce & Durick, Bismarck, for appellee Inclinator Co. of America. Appearance by Joel W. Gilbertson. Submitted on briefs.

Bickle, Coles & Snyder, Bismarck, for appellee Dakota Academy for the Arts. Appearance by Robert J. Snyder. Submitted on briefs.

Tschider & Smith, Bismarck, for appellee Anderson Bldg. Co. Appearance by David A. Tschider. No briefs filed.

MESCHKE, Justice.

Bonnie Jacobs and Kevin Grosz appealed from dismissal of their claims for damages for their loss of consortium and for their emotional distress stemming from injury to Jennifer Grosz, their thirteen-year-old daughter. We reverse.

Jennifer attended dance classes on the third floor of a building in downtown Bismarck. On November 3, 1986, Jennifer and a friend left dance class early. They walked down to the second floor, where they rode an elevator servicing the first two floors of the building to the main floor. The elevator was cage-style and moved on a track attached to the wall of the building.

On the main floor, the girls began to play on the elevator by pushing the indicator button to make it ascend, grabbing the cage, "riding" it and then jumping off. Jennifer apparently became entangled and did not jump off the cage. As the elevator moved upwards, Jennifer was trapped

against the first-floor ceiling, and her air supply was cut off. By the time she was rescued, she had suffered severe and irreversible brain damage. She is now confined to a wheelchair, can move only her eyes, and must be fed through a tube.

Jennifer's divorced parents, individually and on her behalf, sued Anderson Building Company, former owner of the building and installer of the elevator; Herman Eggers, present owner of the building; and the Inclinator Company of America, manufacturer of the elevator. Eggers named the Dakota Academy for the Arts as a third-party defendant. Two of the parents' nine theories were asserted individually, claiming tort damages for their loss of society and companionship with their minor child and for their emotional distress. Eggers moved for summary judgment to dismiss these and another claim. Treating it as a motion for judgment on the pleadings, the trial court dismissed these parents' claims.

Jacobs and Grosz appealed the dismissal, arguing that North Dakota should recognize claims by the parents of an injured child for loss of society and companionship and for emotional distress arising from severe injuries to the child.

We first examine how these questions came here. The trial court considered Grosz and Jacobs, as individuals, completely dismissed from the suit. The court did not act directly on their motion for a N.D. R.Civ.P. 54(b) determination and direction, saying that the appealability of dismissal of their entire claims obviated need for 54(b) action. Instead, the trial court stated, "I would conclude that a Rule 54(b) certification is appropriate here, since these issues can be promptly resolved without the necessity of preparation of a transcript and can be resolved in all probability before this case would, in the normal course of events, go to trial."

■ As the trial court incompletely understood, a judgment can be sufficiently final when it disposes of important claims and parties, even though fewer than all in the action, to qualify under Rule 54(b). Although the trial judge mistakenly believed that express action was not necessary, he clearly determined that there was no just reason for delay and directed the entry of judgment. Since the trial court acted consistently with Rule 54(b), we conclude that this appeal is properly before us. *First Trust Co. of North Dakota v. Conway*, 345 N.W.2d 838, 841 (N.D.1984). *See also Matter of the Estate of Stuckle*, 427 N.W.2d 96 (N.D.1988) (Meschke, Justice, concurring).

The trial court dismissed the parents' claims because "The law in this state, as reflected by the Supreme Court of the state, does not allow recovery...." However, we recently decided that damages for loss of society and companionship and for mental anguish could be awarded in an action for wrongful death of a child, *Hopkins v. McBane*, 427 N.W.2d 85 (N.D.1988), and also for loss of society and companionship in a parent's action against an allegedly negligent tortfeasor in the injury of a minor child. *First Trust Company of North Dakota v. Scheels Hardware*, 429 N.W.2d 5 (N.D.1988).

■ The legislature recently acted to permit recovery in a wrongful death or injury action for noneconomic damages, including those arising from "... mental anguish, emotional distress, ... loss of society and companionship, loss of consortium, ..." NDCC 32–03.2–04.[1] Although this section expressly applies only to claims ac-

---

1. NDCC 32–03.2–04 says:

   "*Economic and noneconomic damages for wrongful death or injury to person.* In any civil action for damages for wrongful death or injury to a person and whether arising out of breach of contract or tort, damages may be awarded by the trier of fact as follows:

   "1. Compensation for economic damages, which are damages arising from medical expenses and medical care, rehabilitation services, custodial care, loss of earnings and earning capacity, loss of income or support, burial costs, cost of substitute domestic services, loss of employment or business or employment opportunities and other monetary losses.

   "2. Compensation for noneconomic damages, which are damages arising from pain, suffering, inconvenience, physical impairment, disfigurement, mental anguish, emotional distress, fear of injury, loss or illness, loss of society and companionship, loss of

cruing after July 8, 1987, it is indicative of legislative sentiment to allow these claims. *See Hopkins, supra* (VandeWalle, Justice, concurring specially).

The social policies have been declared by the legislature. Judicial attempts to make meaningful distinctions between noneconomic aspects of the parent-child relationship would now be implausible and futile.

There is no reason why the new procedure for making a single determination of the amount of noneconomic damages cannot be used in this case. NDCC 32–03.2–05.[2] This narrow channeling of the various categories of noneconomic claims should allay, if not dispel, apprehensions about rational boundaries on tort damages, while permitting evidentiary submission of cognizable factors. *See* Prosser & Keeton, The Law of Torts § 4, at 23 (5th ed. 1984).

We reverse the trial court's dismissal of these claims for loss of society and companionship and for emotional distress and remand for proceedings consistent with this opinion.

ERICKSTAD, C.J., LEVINE and GIERKE, JJ., and VERNON R. PEDERSON, Surrogate Justice, concur.

VERNON R. PEDERSON, Surrogate Justice, sitting in place of VANDE WALLE, J., disqualified.

## ON PETITION FOR REHEARING

MESCHKE, Justice.

On petition for rehearing, appellees requested reconsideration of whether we "should abandon the zone-of-danger rule" utilized in our prior decision in *Whetham v. Bismarck Hospital*, 197 N.W.2d 678 (N.D.

1972). In a response requested by this court, appellants agreed that "a specific determination should be made as to whether North Dakota is going to follow the current trend in the law and overrule the 'zone of danger' test" applied in *Whetham.*

We adhere to our decision, but we do not overrule *Whetham. Whetham, supra,* involved only a claim for emotional and mental shock induced solely by the claimant's apprehension of negligently caused injury to a third person. That is not true here. "As indicated in Chapter 47, emotional distress may be an element of damages in many cases where other interests have been invaded, and tort liability has arisen apart from the emotional distress." Restatement, Torts (Second), § 46 at Comment (b).

In this case, akin to a wrongful death claim, we held that the parents of Jennifer Grosz are entitled to seek damages for loss of society and companionship for the devastating injuries to their daughter caused by the alleged negligence of the defendants. We view emotional distress as a constituent of those damages.

Therefore, we deny the petitions for rehearing.

ERICKSTAD, C.J., LEVINE and GIERKE, JJ., and VERNON R. PEDERSON, Surrogate Justice, concur.

VERNON R. PEDERSON, Surrogate Justice, sitting in place of VANDE WALLE, J., disqualified.

---

consortium, injury to reputation, humiliation and other nonpecuniary damage."

2.  NDCC 32–03.2–05 says:

    *"Separate finding on damages.* In awarding compensation for damages to any party, the trier of fact shall make separate findings which must specify:

    "1. The amount of compensation for past economic damages.

    "2. The amount of compensation for future economic damages.

    "3. The amount of compensation for noneconomic damages."

The only snatch of legislative history on this section, testimony of one witness before the House Judiciary Committee, explained:

"[This] [s]ection ... requires separate findings of damage. This is really nothing new because any plaintiff or defendant who is involved in litigation at this time can ask the court to include in the jury verdict a special verdict form asking the jury to do precisely what is provided for in this bill, ..." Hearings on HB 1571, House Judiciary Committee, 50th Leg.Sess., Feb. 4, 1987 (testimony of David Peterson).

*See* N.D.R.Civ.P. 49.