Bonnie JACOBS and Kevin Grosz, each individually and as natural parents and guardians for Jennifer Grosz, a minor child, Plaintiffs, Appellants and Cross–Appellees,

v.

ANDERSON BUILDING COMPANY, a North Dakota corporation, and Inclinator Company of America, Defendants and Third–Party Plaintiffs.

DAKOTA ACADEMY OF THE ARTS, Defendant, Third–Party Plaintiff, Appellee and Cross–Appellant,

v.

CITY OF BISMARCK, Third–Party Defendant.

Civ. No. 890295.

Supreme Court of North Dakota.

Aug. 1, 1990.

Lundberg, Nodland, Schulz, Lervick, Tharaldson & Dickson, P.C., Bismarck, for plaintiffs, appellants, and cross-appellees; argued by Thomas A. Dickson.

Wheeler Wolf, Bismarck, for defendant, third-party plaintiff, appellee, and cross-appellant; argued by Robert J. Snyder.

MESCHKE, Justice.

Bonnie Jacobs and Kevin Grosz appealed from an order denying their motion for a new trial against Dakota Academy for the Arts for personal injuries to their daughter. We affirm.

On November 3, 1986, thirteen-year-old Jennifer Grosz attended a dance class sponsored by Dakota Academy and held on the third floor of the Anderson Building in downtown Bismarck. Jennifer and a friend left dance class early and began playing on an elevator which serviced the first two floors of the building. This was an open-shaft, "cage" elevator which ran on a track attached to the wall between the first and second floors, proceeding through an opening in the ceiling to the second floor. The girls played by pushing the button to make the elevator ascend, grabbing on to the outside of the cage, and then jumping off before it reached the ceiling. Jennifer somehow became entangled on the outside of the elevator and could not jump off. The elevator ascended into the opening, trapping Jennifer against the ceiling. She suffered severe and permanent injuries.

Her parents, Bonnie Jacobs and Kevin Grosz [hereinafter collectively "Jacobs"], sued the owner of the building, the former owner who had installed the elevator, the elevator manufacturer, and Dakota Academy, asserting claims individually and on Jennifer's behalf. On a prior appeal, we reversed the trial court's dismissal of the parents' individual claims. *Jacobs v. Anderson Building Co.*, 430 N.W.2d 558 (N.D.1988). Jacobs settled before trial with all defendants except Dakota Academy. The remaining claims were tried to a jury, which found Dakota Academy not liable for Jennifer's injuries. The trial court denied Jacobs' motion for a new trial, and Jacobs appealed.

Our decisions on the following issues dispose of this appeal:

    I.  Did the trial court properly instruct on premises liability?

    II.  Did the trial court properly refuse to instruct on the *Butz* presumption?

    III.  Did the trial court erroneously allow prejudicial cross-examination of Bonnie Jacobs?

## I. PREMISES LIABILITY

The Anderson Building is a large commercial building with numerous commercial and residential tenants. It is undisputed that Herman Eggers, the owner of the building, retained possession and control of the common areas, including the entryways, stairways, and elevator. Jacobs asserts, however, that Dakota Academy, as a commercial tenant, had a duty to provide a safe entrance to its leased space on the third floor, including a concurrent duty with the landlord over the entryways, stairways, and elevator.

Jacobs requested various instructions on a commercial tenant's duty to provide safe premises, including the following:

The Dakota Academy for the Arts owes its students a duty to keep its premises in a reasonably safe condition and to provide a safe path of egress from its studio to the street. The duty also extends to the approaches, the entranceways and the stairways leading up to the dance studio. Whether the approaches, entranceways and stairways were reasonably safe depends upon the circumstances surrounding their condition, use and ages of students who would be expected to use them.

When the operator of a business establishment such as the Dakota Academy for the Arts enjoys the benefits of a passageway or stairway by permitting its students to use it as a route to and from the dance studio, it must take reasonable measures to keep that passageway free from hazards.

The trial court refused to give the requested instructions, but instructed the jury as follows:

### DUTY TO REPAIR, INSPECT, AND WARN

At page 3 of my opening instructions I discussed the duties of an owner or occupier of real estate relating to inspection, repair, and giving warning of risk of

harm. As you are aware, there were a number of tenants in the building. The owner of the building did not occupy it. There were common areas of the building, such as the entrances and stairways, that were utilized by more than one tenant and by third persons who were entering the building.

With respect to such common areas, the duty to inspect or repair, which is sometimes referred to as the "duty to make safe," rests upon the owner and upon any other persons who may have assumed the obligation of exercising control over a common area.

A duty known as the "duty to warn" can also exist. The landlord and the tenant have a duty to warn those entering the premises occupied by the tenant of any dangers which might reasonably be expected to be encountered in the common area of a building used to enter and leave that part of the property occupied by the tenant. The warning must be such as would cause a person of ordinary prudence to exercise control for his own safety commensurate with the danger. The tenant also has a duty to notify the landlord of any such dangers of which the tenant was aware or should have been aware.

Jacobs argues that the trial court erred in refusing to give the requested instructions, asserting that a commercial tenant should have a duty to alleviate dangerous conditions existing upon entryways to the leased premises even though the landlord retains possession and control over that part of the property.

■ Jacobs relies upon decisions from a handful of jurisdictions which suggest that a tenant may have a duty to protect invitees from hazards located in entryways or areas adjacent to the leased property. Jacobs' argument runs contrary to the overwhelming weight of authority on the issue. The general rule is succinctly stated in Annot., *Liability of Lessee of Particular Premises in Shopping Center for Injury to Patron from Condition on Portion of Premises not Included in His Leasehold*, 48 A.L.R.3d 1163, 1165–1166 (1973):

[I]t is also well settled that a duty of care will not ordinarily be imposed upon an occupier of land beyond the area over which he has possession and control. Thus, it has been widely held, in cases involving landlord-tenant relationships ..., that where a landlord has retained portions of the premises under his control or for the common use of his tenants, a lessee of part of the premises is not responsible for the safety of third parties injured on the common areas so retained by the lessor.

Other authorities agree. Prosser and Keeton on Torts § 63, at 440 (5th ed. 1984); Restatement (Second) of Torts § 360 comment a (1965); 49 Am.Jur.2d *Landlord and Tenant* § 987 (1970); 62 Am.Jur.2d *Premises Liability* §§ 6, 12, 16 (1990). It is settled that control over the dangerous area is a prerequisite to imposition of premises liability.

■ The policy underpinnings for the majority position are amply portrayed by this situation. Although Jacobs asserts that Jennifer's injuries were proximately caused by Dakota Academy's breach of its duty to provide a means of safe ingress and egress to its third-floor studio, counsel for Jacobs could not articulate at oral argument precisely what Dakota Academy could have done to perform that duty. Dakota Academy did not have possession or control of the elevator, and thus had no authority to disable, remove, or restrict access to the elevator. There can be no duty to make an area safe if the tenant has no authority to carry out that duty. This is precisely why control is an essential prerequisite for imposition of premises liability.

Adoption of the duty urged by Jacobs could lead to absurd results. If extended to its logical conclusion, the duty would require each commercial tenant in a highrise office building or large retail mall to make certain there were no dangerous conditions in any entryway, stairway, or hallway throughout the entire building. Premises liability would be separated from the power to make safe.

As a prerequisite to actionable negligence, a plaintiff is required to establish the existence of a duty on the part of the allegedly negligent person. *Barsness v. General Diesel & Equipment Co.*, 383 N.W.2d 840, 843 (N.D.1986). Whether a duty exists is generally a preliminary question of law for the court. *Rawlings v. Fruhwirth*, 455 N.W.2d 574, 577 (N.D. 1990); *DeLair v. County of LaMoure*, 326 N.W.2d 55, 58 (N.D.1982). The trial court did not err in concluding that Dakota Academy had no duty as a tenant of only part of the building, beyond a duty to warn its invitees and notify the landlord about dangers in the entries and hallways. We therefore conclude that the court did not err in refusing to give the requested instructions.

## II. *BUTZ* PRESUMPTION

■ Jacobs asserts that the trial court improperly refused to instruct the jury that it may be presumed that an adequate warning, if given, would be read and heeded.

A majority of the court approved this presumption in *Butz v. Werner*, 438 N.W.2d 509 (N.D.1989), a products case that applied strict liability. In *Butz*, the plaintiff alleged that the recreational "Super Tube" upon which he was injured was unreasonably dangerous because it lacked adequate warnings. The defendants argued on appeal that the trial court erred in instructing the jury that it is presumed that had adequate warnings been given they would have been read and heeded.

The *Butz* majority observed that many other jurisdictions employed this presumption as a logical corollary to the idea expressed in comment *j* of Restatement (Second) of Torts § 402A (1965):

Our strict products liability caselaw has relied heavily upon Section 402A, Restatement (Second) of Torts (1965). Comment j to Section 402A provides, in pertinent part:

"Where warning is given, the seller may reasonably assume that it will be read and heeded; and a product bearing such a warning, which is safe for use if it is followed, is not in defective condition, nor is it unreasonably dangerous."

Numerous courts have relied upon Comment j in adopting a corollary presumption: that where no warning is given it may be presumed that, had an adequate warning been given, it would have been read and heeded.

.     .     .     .     .

The rationale behind this approach is that it is a logical interpretation of Comment j. If the seller is entitled to a presumption that an adequate warning will be read and heeded, the plaintiff should be entitled to the converse presumption when no warning, or an inadequate warning, is given. As noted by several courts, the presumption works in favor of the manufacturer or seller when an adequate warning is present, but in favor of the plaintiff user when no warning is given.

*Butz v. Werner*, 438 N.W.2d at 517. Agreeing with the jurisdictions which had adopted this approach, the majority opinion concluded that "when no warning is given the plaintiff is entitled to the benefit of a presumption that an adequate warning, if given, would have been read and heeded." *Id. Butz* was a products case that applied strict liability. This is not a strict liability case.

The *Butz* presumption is, in effect, part of a reciprocal principle applied to the burden of proof in strict liability, products cases. The manufacturer or seller gets the benefit of the presumption if an adequate warning is given, and the injured person gets the benefit if no warning, or an inadequate warning, is given. These reciprocal presumptions are grounded in policies uniquely applicable to strict liability actions involving products. According to NDREv 301(a), the function of a presumption is to shift the burden of disproving the presumed fact. We see no reason to shift the customary burden of proof, and the accompanying risk of non-persuasion, from the injured person in an ordinary negligence action like this one.

Jacobs' case against Dakota Academy is not a strict products liability action; it is a

premises liability case based on negligence in failing to warn. The policy grounds which underlie products strict-liability and our adoption of the *Butz* presumption are absent in this case. We are unaware of, and Jacobs has not cited, any relevant statute or case law supporting application of a similar presumption in a negligence-based, failure-to-warn, premises-liability case. Thus, while the *Butz* presumption was a logical extension of an existing principle, adoption of the presumption for this type of case would be creation of new law out of whole cloth.

Strict liability for products has developed as a highly specialized body of law. We are hesitant to broadly transplant emerging doctrines from that area of law into our general tort law. Jacobs has not persuaded us that either our holding in *Butz* or independent policy considerations support approval of the presumption to shift the burden of proof in this type of case. Accordingly, we conclude that the trial court did not err in its instructions to the jury.

## III. EVIDENTIARY ISSUES

■ During cross-examination of Bonnie Jacobs, Dakota Academy's counsel asked questions about the procedural history of the case, particularly the delayed addition of Dakota Academy as a party defendant. Jacobs asserts that this line of questioning was improper and prejudicial.

Our harmless-error rule, NDRCivP 61, says:

No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.

Similarly, NDREv 103(a) states that "[e]rror may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected."

We deem it unnecessary to determine whether the admission of this evidence was erroneous because we conclude, based upon our review of the entire record, that any error in admitting this evidence did not affect the substantial rights of the parties. Thus, any error was harmless.

Accordingly, the order denying the motion for a new trial is affirmed.

ERICKSTAD, C.J., and LEVINE, VANDE WALLE and GIERKE, JJ., concur.

VANDE WALLE, Justice, specially concurring.

It appears to me that in some instances, dependent upon the facts, a tenant owes a duty to its customers regarding safe access to the premises, notwithstanding the tenant has "no control" over the common areas. I do not understand the majority opinion to necessarily foreclose that obligation. For example, a tenant should not be excused from liability for an unusually dangerous access of long standing simply by having informed a landlord who took no steps to alleviate the danger. As the trial court here instructed, the tenant also has a duty to warn its customers of the defect. I suggest that under some circumstances the duty should go even further, *i.e.*, a tenant knowing of a long-standing peril of which the tenant has informed the landlord, should not be permitted to escape liability if the tenant continues to invite customers to the premises even though a warning is given. In those truly perilous situations of long standing, the tenant ought to cease doing business on those premises or, with the landlord, bear the liability for damage to those customers who are injured on the premises.

In this instance, I do not believe the situation was of such a perilous nature. There was no unusual peril present. Only a misuse of the elevator created the danger. Under those circumstances I believe the instruction given by the trial judge as to the duty to repair, inspect and warn was adequate.

GIERKE, J., concurs.