Rose Marie BUTZ, Plaintiff and Appellee,

Scott Butz, Dawn Butz and Robert Butz, Plaintiffs, Appellees and Cross–Appellants,

v.

WORLD WIDE, INC., a Minnesota Corporation, and Cass Oil Co., a North Dakota Corporation, Defendants, Appellants and Cross–Appellees.

Civ. No. 920145.

Supreme Court of North Dakota.

Nov. 5, 1992.

Miller, Norman & Kenney, Moorhead, Minn., for plaintiff and appellee Rose Marie Butz and plaintiffs, appellees, and cross-appellants Scott Butz, Dawn Butz, and Robert Butz; argued by Keith L. Miller, Moorhead, Minn.

Cahill, Maring & Marquart, Moorhead, Minn., for defendants, appellants and cross-appellees; argued by Steven J. Cahill, Moorhead, Minn.

ERICKSTAD, Chief Justice.

Defendants World Wide, Inc., and Cass Oil Co. appeal from part of a judgment entered on April 27, 1992, by the district court, awarding Plaintiff Rose Marie Butz (Rose) the sum of $30,000 in damages for her loss of spousal consortium. Plaintiffs Scott Butz, Dawn Butz, and Robert Butz (the Butz children) cross-appeal from a portion of the same district court judgment dismissing their claim for loss of parental consortium. We affirm.

On June 15, 1984, Charles Butz, Jr., husband of Rose and father of the Butz children, was severely injured in a boating accident. He was riding on a "Super Tube" that was being pulled behind a boat on a lake. While on the "Super Tube," he collided with another boat parked along the shore, causing his injuries. The "Super Tube" was manufactured by World Wide, Inc., and sold by Cass Oil Co.

On January 15, 1985, Charles Butz, Jr., commenced an action in district court against World Wide, Inc., and Cass Oil Co. (World Wide) for the personal injuries sus-

tained in the accident. On June 2, 1987, the jury returned a verdict for Charles Butz, Jr., in excess of $500,000. That judgment was affirmed by this Court in *Butz v. Werner*, 438 N.W.2d 509 (N.D.1989). Neither Rose nor the Butz children asserted their prospective loss of consortium claims in Charles Butz, Jr.'s personal injury action.

On May 2, 1990, Rose and the Butz children brought their loss of consortium claims against World Wide, nearly three years subsequent to the entry of the jury verdict. World Wide moved for summary judgment of dismissal of both Rose's loss of spousal consortium claim and the Butz children's loss of parental consortium claim. World Wide contended that North Dakota does not recognize a cause of action for loss of parental consortium; further, any claim for loss of consortium must mandatorily be joined with the original personal injury action, or thereafter be barred. The district court granted World Wide's motion with respect to the Butz children's claim.

Eventually, the parties applied to the district court for an order certifying questions of law, and on February 14, 1991, the district court entered "Findings of Fact and Order Certifying Questions of Law." However, this Court, on August 2, 1991, dismissed the certified questions and remanded the case to the district court for further proceedings. *Butz v. World Wide, Inc.*, 472 N.W.2d 757 (N.D.1991). On remand, the matter was tried to the district court on April 20, 1992. In its "Findings of Fact, Conclusions of Law and Order for Judgment," the district court awarded Rose the stipulated $30,000 in damages for her loss of spousal consortium. The district court dismissed the Butz children's claim for loss of parental consortium. Judgment was entered accordingly on April 27, 1992, and this appeal and cross-appeal followed.

This case presents the Court with two interrelated issues: (1) Whether or not a loss of consortium action must comply with the procedure of compulsory joinder to the underlying action or thereafter be barred; and (2) Whether or not children have a cause of action for loss of parental consortium.

Because the compulsory joinder issue, if answered in the affirmative, might render the Butz children's cross-appeal moot in this case, we will consider it first. Counsel for both parties suggest to this Court that compulsory joinder for consortium claims is a question of first impression in North Dakota, and that authority found on the issue in other states is divided. We agree with the parties that the states addressing the issue are split as to the proper procedure to utilize in bringing a loss of consortium claim. However, we are not so certain that prior North Dakota authority does not, at least indirectly, discuss the acceptable origination of a loss of consortium action.

This Court, in 1947, decided that the statute of limitations for a consortium action begins to run at the time the "deprived" spouse suffers the loss, which is not always at the same time the "impaired" spouse's action for personal injury accrues. *Milde v. Leigh*, 75 N.D. 418, 28 N.W.2d 530 (1947).[1] More importantly, the *Milde* Court

---

1. In *Milde*, the wife was allegedly sterilized by the defendant because she had delivered a previous child by a Caesarean operation and it was thought that having another child would place her health at a significant risk. The wife became pregnant and birthed another child by a Caesarean operation approximately two years following the apparently unsuccessful sterilization. Upon learning of her subsequent pregnancy, the wife became highly disturbed, nervous, and withdrawn at the thought of experiencing another Caesarean operation. As a result, her husband, the plaintiff, suffered loss of her services and companionship. The action for loss of consortium was instituted within months after the second child was born. Defendant alleged that the action was barred by the statute of limitations because the action for loss of consortium was initiated more than two years (the statute of limitations for a personal injury action at the time) after the sterilization operation. However, this Court determined that the husband's cause of action for loss of consortium did not accrue until he had, in fact, suffered the loss. The husband's loss occurred after the wife discovered that she was pregnant, following the sterilization operation, which was less than two years prior to the bringing of the loss of consortium action.

engaged in a discussion of the character of a loss of consortium action which contained numerous indications that compulsory joinder was, at that time, unnecessary.

> " 'Yet the same tortious conduct also constituted a basis for an action by the husband to recover for harm to those interests and *this action he could maintain without joining his wife....* Unless a statute provides otherwise, a husband may still recover for the harm done to his legally protected interests in a *separate action* against the tortfeasor.' "

*Id.* 28 N.W.2d at 534 (quoting Restatement of Torts § 693 at 492 (1938)) (emphasis added).

A further manifestation of the separateness of consortium claims was found in the discussion in *Milde* of actions brought by parents for loss of their children's consortium.

> " 'Damages recoverable in the one action are not recoverable in the other; a judgment obtained and satisfied in one action will not prevent a recovery in the other; *a release by the one will not affect the other's recovery; a waiver by the child of his own right of action will not affect the parent's recovery;* and an abatement by the death of either the parent or the child will not bar a recovery by the other. Moreover a procedural bar which prevents the child from maintaining an action for the harm which it has sustained will not affect the parent's action.... An analogous situation is found in the suit by a husband for harm to his wife, see Sec. 693.' "

*Id.* 28 N.W.2d at 535 (quoting Restatement of Torts § 703 at 509–10 (1938)) (emphasis added).

**2.** *Milde* was decided during an era when the only individual who could assert a loss of consortium claim was a husband for his wife, or a parent for the child. Wives could not bring a loss of consortium action for their husbands. The entity of marriage and a woman's position within not only the marriage, but also society as well, has substantially changed since the era of *Milde.* The notions and ideologies which served as the foundation for *Milde* are not as widespread or as readily accepted today. *See Hastings v. James River Aerie No. 2337, Etc.,* 246 N.W.2d 747 (N.D.1976). *See also* U.S. Const. amend. XIV.

The language in *Milde,* if not directly on point, at the very least provides an inference that in the past a spouse or parent was free to bring and maintain a loss of consortium claim separately from the underlying personal injury action. We do not believe that such a legal concept is acceptable today.

In addition to the fact that we find *Milde* to be questionable authority today,[2] we also recognize that changes have occurred in American jurisprudence since 1947. The dockets of most courts have expansively multiplied in the past fifty years, to the point of being unmanageable. Committees and task forces across the nation are being constituted to try to find solutions to the docket crisis. Allowing "deprived" parties to bring their loss of consortium claims at any time and under all circumstances within the applicable statute of limitations only burdens, rather than lessens, this very real and pressing problem.

We find merit and persuasiveness in the pleas that judicial economy and docket control will be taxed to their limits if we do not require compulsory joinder. The scholars at the American Law Institute have obviously identified this urgent concern. In *Milde,* the Restatement of Torts was quoted extensively for the proposition that joinder was not necessary, as evidenced in the above citations from *Milde.* However, the very section quoted in *Milde* for the nonjoinder proposition has been redrafted in the Restatement (Second) of Torts, to reflect contemporary problems and concerns. Most notable is the new subsection (2) to Section 693, quoted above in *Milde.* The new subsection reads as follows:

> Furthermore, the issue in *Milde* was not compulsory joinder or a loss of consortium claim. Instead, the issue was the appropriate point of accrual for an action by the "deprived" spouse. Thus, the discussion in *Milde* addressing the separateness of a claim for loss of consortium was dicta, and not binding as established precedent on this Court. Additionally, the very holding of *Milde* is questionable authority at the present time. *See Sime v. Tvenge Associates Architects & Planners, P.C.,* 488 N.W.2d 606, 610–611 (N.D.1992).

"(2) Unless it is not possible to do so, the action for loss of society and services is *required to be joined with the action for illness or bodily harm, and recovery for loss of society and services is allowed only if the two actions are so joined."*

Restatement (Second) of Torts § 693(2) (1981) (emphasis added).

A comment accompanying the new subsection denotes several other concerns, in addition to the docket crisis, which may be alleviated by compulsory joinder.

"The invasion of the deprived spouse's interests in the marriage is a separate tort against that spouse, although it is conditioned upon factors that also constitute a tort against the impaired spouse. Despite this, the possibility of double recovery, together with the danger that different juries may return verdicts that are inconsistent or that overlap, must be obviated when possible by requiring that the cause of action of the deprived spouse for loss of society and services be joined with that of the impaired spouse for trial."

Restatement (Second) of Torts § 693 cmt. g (1981).

Scholars well versed in procedural law also seem to agree with the theory that loss of consortium claims should be joined with the underlying action.

"A small number of decisions have gone one step further to rule that a claim for loss of consortium can be pursued only if it is joined in the action brought by the injured spouse. As to claims for loss of consortium, *this mandatory party joinder response may be the best method of avoiding unnecessary duplicate litigation."*

18 Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction § 4459 at 525–526 (footnote omitted) (emphasis added).

Perhaps the best delineation of reasons for compulsory joinder is contained in the Illinois case *Brown v. Metzger,* 104 Ill.2d 30, 83 Ill.Dec. 344, 470 N.E.2d 302, 60 A.L.R.4th 1165 (Ill.1984). The Illinois Supreme Court determined that loss of con-

sortium claims should be joined with the underlying personal injury action, whenever possible, for the following reasons:

"[T]he most efficient way to preclude double-recovery problems is to require that the loss-of-consortium action be joined, whenever possible, with the impaired spouse's cause of action. Joinder of these related claims will also reduce litigation expenses for the parties, conserve judicial time and resources, and contribute a bit to the reduction of court congestion."

104 Ill.2d at 35, 83 Ill.Dec. at 346, 470 N.E.2d at 304, 60 A.L.R.4th at 1169.

█ We conclude that this is the best approach to loss of consortium claims in North Dakota, and in the future we will require joinder when possible. In the future, if the "deprived" party fails to join the claim, that party must offer the court a compelling reason for non-joinder or it will be dismissed with prejudice. Absent a compelling reason, non-joinder will result in an absolute bar to any loss of consortium claim asserted after the conclusion of the underlying action of the "impaired" party.

We will not, however, apply this new declaration of law to the case at bar. To do so would be unduly burdensome and unfair to the Plaintiffs in this case who have had little warning that this might be our view of what is appropriate. Rather, we will utilize the "Sunburst Doctrine" and apply the present decision prospectively. We reach this determination by reviewing a number of cases previously decided by this Court on the issue of prospective and retroactive application. *See, e.g., First Interstate Bank of Fargo v. Larson,* 475 N.W.2d 538 (N.D.1991) (Court's ruling making antideficiency statutes applicable to general partner's personal guaranties of a general partnership's mortgage debt applied prospectively); *Forster v. North Dakota Workers Comp. Bureau,* 447 N.W.2d 501 (N.D.1989) (due process requirements announced in previous case applied retrospectively); *O'Leary v. Coenen,* 251 N.W.2d 746 (N.D.1977) (decision abandoning use of common-law categories of licensee and invitee in premises liability cases

would be applied prospectively except as to parties to action in which decision was handed down); *Walker v. Omdahl*, 242 N.W.2d 649 (N.D.1976) (opinion holding provisions of session laws providing for increases in unvouchered expense payments unconstitutional would have prospective application); *Olson v. Dillerud*, 226 N.W.2d 363 (N.D.1975) (prior decision holding unconstitutional statutes requiring that any reservation of coal rights contain an accurate description of the coal being reserved would be applied retroactively); *Kitto v. Minot Park District*, 224 N.W.2d 795 (N.D.1974) (decision abolishing the doctrine of governmental immunity would be given prospective effect, except for the parties to the action).

In *Olson*, we acknowledged the relevant considerations outlined by the United States Supreme Court which should be considered when determining whether or not to apply a decision prospectively. Subsequent to *Olson*, we have adhered to those considerations faithfully. Those considerations are:

> " 'First, the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied, *see, e.g., Hanover Shoe, Inc. v. United Shoe Machinery Corp., supra,* 392 U.S. 481, at 496, 88 S.Ct. 2224, at 2233, 20 L.Ed.2d 1231, or by deciding an issue of first impression whose resolution was not clearly foreshadowed, *see, e.g., Allen v. State Board of Elections, supra,* 393 U.S. 544, at 572, 89 S.Ct. 817, at 835, 22 L.Ed.2d 1. Second, it has been stressed that "we must * * * weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation." *Linkletter v. Walker, supra,* 381 U.S. 618, at 629, 85 S.Ct. 1731, at 1738, 14 L.Ed.2d 601. Finally, we have weighed the inequity imposed by retroactive application, for "[w]here a decision of this Court could produce substantial inequitable results if applied retroactively, there is ample basis in our cases for avoiding the 'injustice or hardship' by a holding of nonretroactivity." *Cipriano v. City of Houma, supra,* 395 U.S. 701, at 706, 89 S.Ct. 1897, at 1900, 23 L.Ed.2d 647.' "

*Olson,* 226 N.W.2d at 369 (*quoting Chevron Oil Company v. Huson,* 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971)). *But see Muller v. Custom Distributors, Inc.,* 487 N.W.2d 1 (N.D.1992).

■ In applying the above three considerations to the present facts, we hold that the compulsory joinder rule should be implemented prospectively, and not in this case. First, we are holding contrarily to the dicta in *Milde*. Second, there is no established binding precedent in our state which would indicate to the Butzes that their loss of consortium claims would be barred if not joined with the underlying personal injury action. Finally, it would be very inequitable if we applied the new rule of law to the Butz's claims. Therefore, we conclude that plaintiffs bringing loss of consortium claims accruing on and after the date of this opinion must follow the procedure of compulsory joinder to the underlying personal injury action or thereafter be barred from bringing their claims absent a compelling reason. *See Johnson v. Hassett,* 217 N.W.2d 771 at 780 (N.D. 1974).

■ Having decided that compulsory joinder does not apply to the case at bar, and therefore the judgment of the district court is affirmed in respect to Rose's claim, we now proceed to consider whether or not children have a cause of action for loss of parental consortium. We hold that they do not.

We have considered this issue before in *Hastings v. James River Aerie No. 2337, Etc.,* 246 N.W.2d 747 (N.D.1976), and *Morgel v. Winger,* 290 N.W.2d 266 (N.D.1980). These holdings are clearly contrary to the Butz children's claim. Both of the cases are still binding precedent in North Dakota, and control the issue before the Court.

The Butz children assert that the *Hastings* and *Morgel* cases are outdated due to subsequent occurrences in the area of law which they address. First, the Butz chil-

dren argue that the passage of Section 32–03.2–04, N.D.C.C., by the North Dakota Legislature, is indicative of the legislative intent to allow children a loss of consortium claim.[3] We do not agree. The effect of Section 32–03.2–04, N.D.C.C., was *not an expansion of the class of potential plaintiffs* in loss of consortium claims; *rather, it expanded the types of damages available to an already-existing class of plaintiffs*. Therefore, the new statute does not bolster the Butz children's argument in this case. *See* Section 32–03.2–04, N.D.C.C.

The Butz children also contend that our earlier decisions in *Hopkins v. McBane*, 427 N.W.2d 85 (N.D.1988), *First Trust Co. v. Scheels Hardware*, 429 N.W.2d 5 (N.D. 1988), and *Jacobs v. Anderson Bldg. Co.*, 430 N.W.2d 558 (N.D.1988), strengthen their claim for loss of parental consortium. They believe that the three foregoing cases are indicative of some type of extensive trend which is broadening the spectrum for loss of consortium claims. Once again, we must disagree. The decisions in those cases permitted parents recovery for loss of their children's society, comfort, and companionship. Parents were an already-existing class of plaintiffs in wrongful death and personal injury actions for children; however, such "nonpecuniary" damages were not previously recoverable. *McBane* and its progeny did not expand the class of plaintiffs, it merely expanded the damages which could be recovered in wrongful death or personal injury cases. Thus, the argument that *McBane* and its progeny allow children to bring an action for loss of parental consortium is overbroad and unpersuasive.

We continue to believe the ten reasons for denying children a cause of action for loss of parental consortium, set out in the annotation found at 69 A.L.R.3d 528,[4] quoted with approval in *Hastings*, are still valid. Furthermore, we believe our rationale in *Morgel* remains a sound interpretation of the law.

"We agree with the California Court which, in *Borer v. American Airlines, Inc.*, 19 Cal.3d 441, 138 Cal.Rptr. 302, 563 P.2d 858, 862 (1977), said that the question of a child's right to recover for loss of parental consortium is one of policy. Because we believe that the question is one of policy, *we conclude that the birth of the child's cause of action for loss of*

---

3. Section 32–03.2–04, N.D.C.C., became effective July 8, 1987, three years subsequent to Charles Butz, Jr.'s accident. The Butz children do not contend that the statute is binding on this Court in determination of their claim, but only that it offers some indication and guidance as to the legislature's intent. They assert that there is no longer a barrier to their claim, and that we should recognize the legislature's expansive view of loss of consortium claims. *See Hopkins v. McBane*, 427 N.W.2d 85, 95–96 (N.D.1988) (VandeWalle, J., and Levine, J., concurring specially).

The statute reads as follows:

"*Economic and noneconomic damages for wrongful death or injury to person.* In any civil action for damages for wrongful death or injury to a person and whether arising out of breach of contract or tort, damages may be awarded by the trier of fact as follows:

1. Compensation for economic damages, which are damages arising from medical expenses and medical care, rehabilitation services, custodial care, loss of earnings and earning capacity, loss of income or support, burial costs, cost of substitute domestic services, loss of employment or business or employment opportunities and other monetary losses.

2. Compensation for noneconomic damages, which are damages arising from pain, suffering, inconvenience, physical impairment, disfigurement, mental anguish, emotional distress, fear of injury, loss of illness, loss of society and companionship, loss of consortium, injury to reputation, humiliation, and other nonpecuniary damage."
Section 32–03.2–04, N.D.C.C.

4. 69 A.L.R.3d 528, has currently been superseded by 11 A.L.R.4th 549. The new Annotation enumerates the very same ten reasons for denying children a cause of action for loss of parental consortium. They are:

"(1) the absence of any enforceable claim on the child's part to the parent's services, (2) the absence of precedents, (3) the uncertainty and remoteness of the damages involved, (4) the possible overlap with the parent's recovery, (5) the multiplication of litigation, (6) the possibility of upsetting settlements made with parents, (7) the danger of fabricated actions, (8) the increase in insurance costs, (9) the public policy expressed in some jurisdictions in the enactment of 'heart balm' statutes, and (10) family problems arising from segregated awards to children."
11 A.L.R.4th at 553–54.

*parental consortium should be attended to by the Legislature as its obstetrician."*

*Morgel*, 290 N.W.2d at 267 (emphasis added).

For the foregoing reasons, we affirm the judgment of the district court.

MESCHKE, LEVINE and JOHNSON, JJ., concur.

VANDE WALLE, Justice, concurring specially.

In *Hopkins v. McBane*, 427 N.W.2d 85, 95 (N.D.1988), in a special concurrence, I stated that "[o]rdinarily the Legislature should enact legislation if there is to be a substantial change in our law in order that the various consequences of such a change may be considered and discussed through the legislative study and hearing process and in order that the precipitous change resulting from a judicial decision in a particular case may be avoided." *Hopkins, supra*, VandeWalle, J., concurring specially.

Consistent with that statement, I today agree with the majority that the Legislature should enact legislation establishing a child's cause of action for loss of parental consortium if such a cause of action is to be created. I do not agree that the ten reasons specified in an annotation at 69 A.L.R.3d 528, repeated in 11 A.L.R.4th 549, are necessarily reasons why the Legislature should not adopt a cause of action for loss of parental consortium.

In *Hastings v. James River Aerie No. 2337, Etc.*, 246 N.W.2d 747, 753 (N.D.1976), the court observed that the annotation "cites ten reasons why such an action *short of specific legislation* providing for same should not be allowed." (emphasis supplied). I am not convinced that all ten reasons are valid reasons why this court should not adopt such a cause of action. I am less convinced they are valid reasons why the Legislature should not enact such a cause of action. Plainly stated, I disagree that all 10 reasons are valid reasons why such a cause of action should not be allowed. When juxtaposed against the

right of parents to recover for loss of consortium of their child, the lack of a concurrent cause of action for loss of parental consortium is reminiscent of a time and practice not to be emulated when children were considered chattels, the property of the parents, their prime purpose to produce income and provide for the parents.

Thus, while adhering to the proposition that the Legislature should establish the cause of action for loss of parental consortium, I do not want our opinion to be used before the Legislature as a reason against the enactment of that action. In all other respects, I agree with the majority opinion.