No. 14763

IN THE SUPREME COURT OF THE STATE OF MONTANA

1979

---

IN THE MATTER OF C.M.S.,
A DEPENDENT AND NEGLECTED CHILD.

---

Appeal from:   District Court of the Second Judicial District,
               Honorable Arnold Olsen, Judge presiding.

Counsel of Record:

    For Appellant:

        Leonard J. Haxby, Butte, Montana

    For Respondent:

        John G. Winston, County Attorney, Butte, Montana
        Michael E. Wheat, Deputy County Attorney, Butte, Montana
        Henningsen, Purcell and Genzberger, Butte, Montana
        Corette, Smith, Dean, Pohlman and Allen, Butte, Montana
        John R. Carr, Miles City, Montana

---

                        Submitted on briefs: September 20, 1979

                                    Decided:   NOV 1  1979

Filed:   NOV

_____
              Thomas J. Kearney
                              Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

This is an appeal from a judgment finding C.M.S. a dependent and neglected child and giving permanent custody with the right to consent to adoption to the Department of Social and Rehabilitation Services of the State of Montana.

C.M.S., a minor child, was born in Butte, Silver Bow County, Montana, on July 9, 1975. Her mother, at both the time of conception and delivery, was confined to the State Hospital at Warm Springs, Montana, having been acquitted of the charge of homicide by reason of a mental defect excluding responsibility. The name of the father is unknown, and this is reflected upon the child's birth certificate.

Following the birth of the child, the mother was returned to the State Hospital at Warm Springs where she has been and is still confined. The child was placed under the protective guidance of the Butte-Silver Bow Office of the Department of Social and Rehabilitation Services. Immediately following her birth, on July 11, 1975, the Department placed the child in a foster home, licensed by the State of Montana, to insure that the child should receive proper care. The child has remained in this same home for over 3-1/2 years at the time of hearing, and at this point, over 4 years. The home provided for the child has four other children and is the only family unit the child has ever had.

During the 3-1/2 years prior to the hearing, the Department of Social and Rehabilitation Services (SRS) sought on three occasions to acquire permanent custody with the right to consent to adoption. On each occasion, SRS's petition was objected to by the guardian of the biological mother upon the grounds that she was mentally incompetent, was

confined at the Warm Springs State Hospital, a disability which prevented her from caring for the child.

The Honorable A. B. Martin of Miles City, Montana, made an order following acquittal of the mother on homicide charges by reason of mental defect excluding responsibility, that James B. Hathaway be appointed as guardian of the person and the estate of the mother, and counsel was approved by that court for the guardianship.

On November 23, 1976, SRS filed this petition in the District Court of Silver Bow County for permanent custody of the child with the right to consent to her adoption. After notice was given to all concerned parties, a series of hearings were held to determine whether SRS should be awarded the permanent custody with the right to consent to adoption. At these hearings, Leonard J. Haxby appeared on behalf of the mother. John R. Carr was retained by the mother's guardian, James Hathaway of Miles City, to represent the interests of the guardian in the proceedings. James E. Purcell was appointed by the court as attorney for the minor child. Michael E. Wheat, assistant deputy county attorney, appeared for SRS, and Dolphy O. Pohlman represented the foster parents.

At a hearing on December 21, 1978, after all parties had been properly served and were present in court and represented by counsel, a motion was made by appellant's counsel that the court lacked proper jurisdiction over the matter. The hearing was continued so that additional time could be taken to determine the restoration capacity of appellant, who at that time was making an effort to be released from the State Hospital and restored to capacity. The court ordered that the hearing resume on February 15,

1979. On that date the hearing was resumed, and appellant again objected to the jurisdiction of the court. The court overruled the objection and proceeded to a final hearing. From the evidence adduced at the hearing, the court found that C.M.S. was abused, dependent and neglected and granted the petition of SRS for permanent custody of the child with the right of adoption in the State.

Two issues are raised by appellant:

(1) Whether the District Court lacked jurisdiction to hear the matter because appellant did not consent to the proceedings?

(2) Whether the findings of the court that C.M.S. was abused, dependent and neglected were supported by sufficient credible evidence?

Regarding the first issue, appellant maintains that consent was a jurisdictional prerequisite to the proceedings in the instant case. Appellant argues that SRS's petition was, in effect, a petition for adoption and under section 40-8-111, MCA, consent is required for adoptions. Before the court could grant SRS custody of the child with the right to consent to her adoption, appellant contends that SRS had to obtain either her consent or that of her legal guardian. Without such consent, the court lacked the necessary jurisdiction to proceed.

In answering this argument, we note first that appellant is correct in asserting that, as a general rule, parental consent is required for adoptions. Section 40-8-111, MCA. In this case, however, the consent of appellant or her legal guardian was not necessary for the court to obtain jurisdiction. The petition filed by SRS was not for an adoption but was for a declaration of dependency and

-4-

neglect. Chapter 3, Title 41 of the Montana Code Annotated provides that children may be declared dependent and neglected under certain circumstances and that a petitioner may ask for permanent legal custody with the right to consent to adoption as relief. Parental consent is neither necessary to declare a child abused, dependent or neglected nor to grant permanent custody of the child to persons other than the natural parents. All that is required, rather, is that the court find, upon the basis of sufficient credible evidence, that the child is, within the terms of the statutory definitions, "abused, dependent, or neglected."

Appellant's apparent confusion lies with the number of statutory schemes available for the termination of parental rights and the fact that, to some extent, these statutory schemes may be said to overlap. While consent is required under some schemes, it is not required under others. Previously, we have attempted to clarify the relationships between the statutory schemes where others have been confused. We stated in Matter of Guardianship of Aschenbrenner (1979), _____ Mont. _____, 597 P.2d 1156, 1164, 36 St.Rep. 1282, 1290-1291:

> "The confusion of the District Court is understandable. We are able to identify at least five statutory schemes governing the termination of parental rights or the custody of children or both. [Citations omitted.]

> "Nevertheless, while there is some overlap in these various procedures as to general subject matter, each is used for a distinct purpose and sets forth specific procedures which must be followed before a valid judgment or order may be issued."

Here, SRS proceeded under the provisions for declaring a child dependent or neglected. Parental consent is not required under this chapter for at least two reasons.

First, requiring consent could conceivably defeat the policy and the purposes of protecting abused, dependent, and neglected children:

> "(1) It is hereby declared to be the policy of the state of Montana to:
>
> "(a) insure that all youth are afforded an adequate physical and emotional environment to promote normal development;
>
> ". . .
>
> "(2) It is the policy of this state to provide for the protection of children whose health and welfare are adversely affected and further threatened by the conduct of those responsible for their care and protection . . ." Section 41-3-101, MCA.

Second, it is, strictly speaking, illogical to require parental consent in dependency and neglect proceedings. Such proceedings by their very nature are hostile to the parents and against their wishes.

Even the adoption statutes of this state except the general requirement of parental consent where children are abused, dependent and neglected. Section 40-8-111, MCA, provides in pertinent part:

> "(1) An adoption of a child may be decreed when there have been filed written consents to adoption executed by:
>
> "(a) both parents, if living, or the surviving parent of a child, <u>provided</u> <u>that</u> <u>consent</u> <u>shall</u> <u>not</u> <u>be</u> <u>required</u> <u>from</u> <u>a</u> <u>father</u> <u>or</u> <u>mother</u>:
>
> ". . .
>
> "(iii) who has been judicially deprived of the custody of the child on account of cruelty or neglect toward the child;
>
> "(iv) who has . . . willfully abandoned such child;
>
> "(v) who has caused the child to be maintained by . . . the department of social and rehabilitation services of the state of Montana for a period of 1 year without contributing to the support of said child during said period, if able; or

"(vi) if it is proven to the satisfaction of
the court that said father or mother, if able,
has not contributed to the support of said child
during a period of 1 year before the filing of
a petition for adoption." (Emphasis added.)

Here, the rights of the natural parents to due process of law were properly recognized. The specific procedures in section 41-3-401, MCA, were complied with. Proper notice was given to appellant and her guardian. The father of the child was not known, is not now known, and has been never named on the child's birth certificate. Appellant, who was present at the hearing of the District Court, also had a chance to refute the allegations, but she chose not to take advantage of the opportunity. The only testimony presented on her behalf was by her home economics teacher at the State Hospital regarding her ability in the classroom.

We find that the consent of appellant or that of her legal guardian was not necessary for the court to obtain jurisdiction in the instant case.

Turning to the second issue, appellant argues that the District Court abused its discretion in finding that C.M.S. was abused, dependent and neglected because the findings were not supported by sufficient credible evidence.

In addressing the duty of a District Court to make findings in an abuse or neglect action, this Court has recognized that the District Court's findings will enjoy a presumption of correctness and will not be overturned unless unsupported by credible evidence that would amount to a clear abuse of discretion. In the decision of In re G., Youths in Need of Care (1977), ____ Mont. ____, 570 P.2d 1110, 1112, 34 St.Rep. 1179, 1181-82, we stated:

> "This Court is mindful that the primary duty of deciding the proper custody of the child is the task of the District Court.  As a result, all reasonable presumptions as to the correctness of the determination by the District Court will be made.  [Citations omitted.]  Due to this presumption of correctness, the District Court findings will not be disturbed on appeal unless there is a mistake of law or finding of fact not supported by credible evidence that would amount to a clear abuse of discretion."

At issue here is whether there was sufficient credible evidence to support the finding that C.M.S. was "abused, dependent and neglected."  Those terms are defined under section 41-3-102, MCA:

> "(2) 'Abuse' or 'neglect' means:

> ". . .

> "(b) the commission or omission of any act or acts by any person in the status of parent, guardian, or custodian who thereby and by reason of physical or mental incapacity or other cause refuses, or, with state and private aid and assistance, is unable to discharge the duties and responsibilities for proper and necessary subsistence, education, medical, or any other care necessary for the youth's physical, moral and emotional well being.

> "(3) 'Dependent youth' means a youth who is abandoned, dependent upon the public for support, destitute, without parents or guardian or under the care and supervision of a suitable adult, or who has no proper guidance to provide for his necessary physical, moral, and emotional well being . . ."

We find that the District Court did not abuse its discretion in finding that C.M.S. was "abused, dependent and neglected" and that there was sufficient credible evidence to support the findings of the court.  With respect to the finding of "abuse or neglect," we take judicial notice of the order filed in this case that appellant was confined to the State Hospital in 1973; that she has suffered from an organic brain dysfunction since birth; that she experiences delusions; and, that her condition is diagnosed as paranoid

schizophrenia with no hope of significant improvement in the foreseeable future.

The record also discloses that appellant was present at the hearings held by the District Court regarding SRS's petition, but made no attempt to personally testify as to her parental fitness. The only testimony presented on behalf of appellant regarding her parental fitness was that of a home economics teacher from the State Hospital who testified that appellant had successfully completed a home economics course, one aspect of which was child development. We believe that, under the statute, appellant's confinement is a sufficient act of omission which, by reason of physical and mental incapacity, renders appellant unable to discharge the duties and responsibilities necessary for the child's well-being.

With respect to the District Court's finding that C.M.S. was a dependent youth, the record discloses that appellant is possessed of a $40,000 estate and that she has contributed in no substantial way to the support of C.M.S. Rather, the support which has been given has been provided by SRS and the foster parents. Finally, the record indicates that appellant, because of her mental condition, could not provide proper guidance for C.M.S.'s necessary physical, moral and emotional well-being.

Appellant is demanding every facet of statutory scheme be severely and strictly scrutinized to protect the rights of the natural parent. However, proceedings conducted under the "abuse statute" demand and provide a certain amount of elasticity to the court. Every case is unique and must be dealt with on its own merits. Absent a clear abuse of discretion the decision of the District Court is to be upheld. There is no such abuse of discretion here.

The District Court in all such hearings has an obligation to balance the rights of the mother and the child. And while the appellant's rights are of great import, it is not an absolute right. In a recent matter from the District of Columbia, Matter of the Adoption of J.S.R. (D.C. 1977), 374 A.2d 860, 863, the court held:

> "The right of a natural parent to raise one's child is a fundamental and essential one which is constitutionally protected. [Citations omitted.] However, it is not an absolute one. The state has both the right and the duty to protect minor children through judicial determinations of their interest. To this end the state has a substantial range of authority to protect the welfare of the child. [Citations omitted.]"

See also Matter of Guardianship of Doney (1977), ____ Mont. _____, 570 P.2d 575, 577, 34 St.Rep. 1107, 1110; Matter of Guardianship of Aschenbrenner (1979), ____ Mont. ____, 597 P.2d 1156, 1160, 36 St.Rep. 1282, 1284; Boyer v. Boyer (Ohio 1976), 346 N.E.2d 286.

This Court recently faced a similar contention. In the Matter of Inquiry into J.J.S., Youth in Need of Care (1978), ____ Mont. ____, 577 P.2d 378, 381, 35 St.Rep. 394, 397, the Court held:

> "We find no abuse of discretion by the District Court in awarding permanent custody to SRS. In determining the custody issue, the best interests of the child is the paramount concern. In the Matter of Henderson (1975), 168 Mont. 329, 342 P.2d 1204, this Court said:
>
> "'What is, or what is not in the best interest of the child depends upon the facts and circumstances of each case. The responsibility of deciding custody is a delicate one which is lodged with the district court. The judge hearing oral testimony in such a controversy has a superior advantage in determining the same, and his decision ought not to be disturbed except upon a clear showing of abuse of discretion.' [Citations omitted.]"

While it is the function of this Court whenever possible to protect the unity of the family under section 41-3-

101, MCA, this is not a factor in this cause. Here the child has never had a viable parent-child relationship with the mother. In fact, the child has never seen or been associated with her natural mother. She knows but one family--her foster home. It is the only family relationship the child has. Indeed, her foster parents have willingly undertaken the obligations of raising this child, and what appellant neglects to realize is that the obligations that are attendant with parenthood have never in any way been assumed by appellant, the natural mother.

This Court in a recent decision, In re G., supra, 570 P.2d at 1114, 34 St.Rep. at 1179, set forth the criteria which will be considered in dependent and neglect cases. There we noted:

> "Children have a right under the 'best interest test' to receive normal physical and emotional development. By looking at the totality of the circumstances, the court may determine what is the child's 'best interest.'"

Viewing all the testimony presented, one relevant fact emerges: The child is an essential part of a family. She has developed an emotional and physical trust for her foster parents. The relationship that she has with her "brothers and sisters" can only be developed in a loving environment. This child is undergoing a normal and physical development within a proper family home situation, and it is in her best interest that she remains in same.

The court recognized that there were competing rights between the child and the mother here. The court appointed counsel to represent the child's interests. After reviewing all of the facts and evidence, there can be but one conclusion--the best interests of C.M.S. can only be served by affirming the judgment of the District Court.

The judgment of the District Court is in accord with its findings of fact and conclusions of law and is affirmed.

_____
                                Justices

We concur:

_____
          Chief Justice

_____

_____
          Justices