IN THE SUPREME COURT OF TENNESSEE
AT JACKSON
November 14, 2002 Session

## LINDSAY TAYLOR, ET AL. v. AL BEARD, ET AL.

**Appeal by Permission from the Court of Appeals**
**Circuit Court for Shelby County**
**No. 84505 T.D.     Robert L. Childers, Judge**

---

**No. W2001-00347-SC-R11-CV - Filed March 3, 2003**

---

We granted review to determine whether Tennessee should adopt a cause of action allowing a child to recover for loss of parental consortium due to an injury to the child's parent. The trial court dismissed the claims for loss of parental consortium after finding that no such cause of action exists. The Court of Appeals affirmed. We hold that this Court should not adopt a common law cause of action for loss of parental consortium in personal injury cases and that the issue of whether to create such a cause of action is a matter of legislative discretion. We therefore affirm the Court of Appeals' judgment.

**Tenn. R. App. P. 11  Appeal by Permission; Judgment of the Court of Appeals**
**Affirmed**

E. RILEY ANDERSON, J., delivered the opinion of the court, in which FRANK F. DROWOTA, III, C.J., and ADOLPHO A. BIRCH, JR., JANICE M. HOLDER, and WILLIAM M. BARKER, JJ., joined.

Larry E. Parrish, Memphis, Tennessee, for the appellants, Lindsay Taylor, Rachel Taylor, and Bradford Taylor.

Tim Wade Hellen, Memphis, Tennessee, for the appellees, Al Beard and Southeastern Motor Freight Company.

### OPINION

### Background

On October 17, 1995, Al Beard was driving a truck for his employer, Southeastern Motor Freight Company ("Southeastern"), eastbound on Sam Cooper Boulevard in Shelby County, Tennessee, when he caused a vehicular chain reaction by striking another eastbound vehicle which, in turn, rear-ended a Ford Windstar van also being driven eastbound by Pamela Taylor and occupied by her minor daughter, Lindsay Taylor. As a result, the Taylors' van careened out of control into still

another eastbound car and then went off the south side of the roadway. Both Pamela Taylor and her daughter, Lindsay Taylor, sustained injuries from the accident.[1]

On January 17, 1997, Beard and Southeastern ("appellees") and Lindsay Taylor, acting through her parents, John Sidney Taylor and Pamela Taylor, settled her personal injury claim and sought court approval by filing a Joint Minor's Settlement Petition with the trial court. Prior to the joint petition being approved, Lindsay Taylor, by next friend, filed an amendment to the joint petition which added her brother, Bradford Clayton Taylor, and her sister, Rachel Elizabeth Taylor, as additional plaintiffs and styled the petition as a "Complaint for Personal Injury and Loss of Services." The amendment added new causes of action on behalf of all three Taylor minor children, including an action for loss of parental consortium resulting from the injuries sustained by their mother, Pamela Taylor. The trial court dismissed the Minor's Settlement Petition and treated the amendment as a separate complaint.

The appellees filed a motion for summary judgment on the claims by the Taylor minor children for loss of parental consortium, which was granted by the trial court.[2]

The Taylor minor children, Lindsay Taylor, Bradford Taylor, and Rachel Taylor ("appellants"), by next friend, appealed the trial court's judgment dismissing their claims for loss of parental consortium. Citing the judiciary's limited role in creating public policy, as well as its prior decision in Still v. Baptist Hosp., Inc., 755 S.W.2d 807 (Tenn. Ct. App. 1988), the Court of Appeals affirmed the trial court, holding that Tennessee does not recognize a cause of action for a child's loss of consortium due to personal injuries to the child's parent.

We granted the appellants' application for permission to appeal.

## Analysis

The appellants argue that this Court should recognize and adopt a new, common law cause of action for a child's loss of parental consortium in personal injury cases. Although the appellants recognize that the common law rule traditionally excludes such a claim, they cite a number of state court decisions that have recognized an action for loss of parental consortium and argue that this Court should likewise allow the minor children of an injured parent to be compensated for the loss of consortium caused by a culpable tortfeasor.

The appellees respond that it is not within the province of the judiciary to adopt a new cause of action for loss of parental consortium regardless of the alleged merits for doing so. Moreover, the

---

[1] On September 26, 1996, Beard and Southeastern settled all claims concerning the personal injuries suffered by Pamela Taylor by paying $500,000 and executing a compromise release.

[2] Lindsay Taylor later, on October 2, 2000, obtained a jury verdict in the amount of $411,320.00 on her claim for her separate personal injuries, exclusive of the loss of consortium claim.

appellees point out that a majority of other state jurisdictions have refused to recognize this new cause of action because of policy considerations that militate against its recognition.

We begin our analysis by reviewing the development of the law of consortium. The loss of consortium action had its genesis in early Roman Law, when the paterfamilias, or head of the household, had an action for violence committed against his wife, children or slaves on the theory they were so identified with him that the wrong was to himself. By the Thirteenth Century, the common law had adopted the idea in part, altering it to a damage action for loss of services of the servant because of violence. By the early Seventeenth Century in England, since the station of a wife under early common law was that of a valuable servant of the husband who could not sue in her own name, the action was extended to include the loss of her domestic services. Over the years, emphasis shifted away from loss of services toward a recognition of the intangible elements of domestic relations, such as companionship and affection. See Still, 755 S.W.2d at 809-10; Guy v. Livesey, 79 Eng. Rep. 428 (1619). Tennessee adopted this action as a part of its common law and eventually expanded it to include recovery for the loss of the wife's services, as well as the loss of her society and companionship due to tortious injury. See Still, 755 S.W.2d at 810-11; Dunn v. Alabama Oil & Gas Co., 299 S.W.2d 25, 28 (Tenn. Ct. App. 1956).

For years, the action for loss of consortium remained available only to husbands as this Court chose to defer its further development to the legislature. See Krohn v. Richardson-Merrell, Inc., 406 S.W.2d 166, 167 (Tenn. 1966), cert. denied 386 U.S. 970 (1967); Rush v. Great Am. Ins. Co., 376 S.W.2d 454, 458-59 (Tenn. 1964). The legislature responded in 1969 by codifying the common law action for loss of consortium and making it available to both spouses in personal injury cases. See 1969 Tenn. Pub. Acts ch. 86, § 1, now codified at Tenn. Code Ann. § 25-1-106 (2000) ("There shall exist in cases where such damages are proved by a spouse, a right to recover for loss of consortium.")

No further action by the legislature or the courts took place until recently when, in Jordan v. Baptist Three Rivers Hosp., 984 S.W.2d 593 (Tenn. 1999), this Court was asked to decide whether the Wrongful Death Act allows recovery for loss of spousal consortium and loss of parental consortium in wrongful death cases. This Court recognized that the language of the Wrongful Death Act preserves the decedent's cause of action while also permitting recovery of the "incidental damages" suffered by the survivors.[3] After observing that incidental damages have been judicially defined to include the "pecuniary value of the decedent's life," Jordan, 984 S.W.2d at 600 (quoting Spencer v. A-1 Crane Serv., Inc., 880 S.W.2d 938, 943 (Tenn. 1994)), we concluded that under the

---

[3] Where a person's death is caused by the wrongful act, fault, or omission of another, and suit is brought for damages . . . the party suing shall, if entitled to damages, have the right to recover for the mental and physical suffering, loss of time, and necessary expenses resulting to the deceased from the personal injuries, *and also the damages resulting to the parties for whose use and benefit the right of action survives from the death consequent upon the injuries received.*

Tenn. Code. Ann. § 20-5-113 (1994) (emphasis added).

wording of the Wrongful Death Act, "pecuniary value" includes spousal *and* parental consortium damages.[4] Our decision merely interpreted the language of an existing statute; we did not create a new cause of action nor did we express any "opinion as to whether the loss of parental consortium may be recovered in personal injury actions in which the parent or parents survive." Jordan, 984 S.W.2d at 596.

A cause of action for loss of parental consortium was unknown at common law and unanimously rejected by American courts until 1980. The first court to adopt a loss of parental consortium common law action was the Supreme Judicial Court of Massachusetts in Ferriter v. Daniel O'Connell's Sons, 381 Mass. 507, 413 N.E.2d 690 (Mass. 1980).

In considering this question of first impression in this State, *i.e.*, whether a common law cause of action for loss of parental consortium should be adopted in personal injury actions, we have examined the decisions of other state courts. Our review indicates that the majority of state courts have refused to recognize a cause of action for loss of parental consortium in personal injury cases due to (1) questions regarding the scope of the class of plaintiffs to whom the action is available, (2) the additional economic burden placed upon the general public, (3) fear of a multiplicity of actions, (4) the difficulty in assessing damages and (5) the possibility for double recovery. See, e.g., Mendillo v. Bd. of Educ., 717 A.2d 1177 (Conn. 1998) (refusing to recognize the parental consortium action in personal injury cases because the problems raised by the action would outweigh the benefits); Salin v. Kloempken, 322 N.W.2d 736 (Minn. 1982) (rejecting the parental consortium action in personal injury cases after weighing all the policy considerations); Butz v. World Wide, Inc., 492 N.W.2d 88 (N.D. 1992) (refusing to recognize parental consortium action in personal injury cases due to compelling reasons against recognition).

Similarly, many courts have also refused to recognize the action on the grounds that it is not a matter for the courts but for the legislature to resolve. See, e.g., Gray v. Suggs, 728 S.W.2d 148 (Ark. 1987) (creation of a parental consortium claim is not a function of the judiciary, but is a matter for the legislature); Lee v. Colo. Dep't of Health, 718 P.2d 221 (Colo. 1986) (deferring the matter to the legislature); Thompson v. Love, 661 So. 2d 1131 (Miss. 1995) (finding the parental consortium claim to be a public and social policy matter best left to the legislature).

On the other hand, a minority of states have adopted the parental loss of consortium action. One state has done so through its legislature. See La. Civ. Code Ann. art. 2315 (West 2002) (allowing recovery for loss of spousal and parental consortium in personal injury cases). The remaining states in the minority have judicially adopted the action based on various policy grounds. See, e.g., Williams v. Hook, 804 P.2d 1131 (Okla. 1990) (judicially creating new cause of action for loss of parental consortium in personal injury cases on the grounds that to deny such recovery while

---

[4] As a result, we overruled Davidson Benedict Co. v. Severson, 72 S.W. 967 (Tenn. 1903), which prohibited recovery of spousal consortium losses under the Wrongful Death Act. Furthermore, we implicitly overruled the portion of Still that held that the Wrongful Death Act "does not provide for . . . loss of consortium by the decedent's children." Still, 755 S.W.2d at 813.

allowing recovery in wrongful death cases would be anomalous and illogical); Reagan v. Vaughn, 804 S.W.2d 463 (Tex. 1990) (recognizing cause of action for loss of parental consortium in order to protect and affirm the value of parent-child relationships).

After reviewing these decisions, we agree with those courts that have affirmed the value of parent-child relationships and we recognize that "[w]hen the vitally important parent-child relationship is impaired and the child loses the love, guidance and close companionship of a parent, the child is deprived of something that is indeed valuable and precious." Jordan, 984 S.W.2d at 601. The relevant question for us, however, is not the reality and magnitude of the child's injury, but whether it is the judiciary's role to create the proposed cause of action. In our view, the appellants do not simply request that we remove an impediment to the continual development of the common law, nor do they ask us to interpret an ambiguous statutory or constitutional provision. Rather, the appellants ask this Court to declare the public policy of this State by creating a previously unrecognized common law cause of action in an area where the legislature has taken action. We decline to do so for the following reasons.

This Court has long recognized that it has a limited role in declaring public policy and has consistently stated that "[t]he determination of public policy is primarily a function of the legislature," but that the judiciary may determine "public policy in the absence of any constitutional or statutory declaration." Alcazar v. Hayes, 982 S.W.2d 845, 851 (Tenn. 1998).

Our concern about our limited role is particularly relevant in this case where we are being asked to further develop the law of consortium by adopting a common law cause of action for loss of parental consortium in personal injury cases that presently does not exist. To do so would require us to create a cause of action with potentially far-reaching social and legal consequences in an area that we have consistently left to legislative discretion. This is an issue of public policy and interest balancing in which the legislature has involved itself before, *i.e.*, loss of spousal consortium, Tenn. Code Ann. § 25-1-102, and we believe it is particularly appropriate for this Court to defer and leave this issue to the discretion of the legislature. Faced with a similar challenge, the Oregon Court of Appeals articulated a view with which we agree:

> As we view it, the legislature's decision in allowing wrongful death actions for the benefit of children while not authorizing other kinds of actions is precisely the kind of policy and interest balancing to which this court should defer. We think that this is particularly true where, as here, in addition to the legislature's limited acceptance of the right of children to bring suit where their relationship with their parent or parents has suffered injury, the legislature has also thoroughly occupied itself in the area of the family by determining the availability of actions for loss of consortium for both spouses. *Where the legislature has thoroughly involved itself in an area of the law and where its decisions in that area appear to set discreet boundaries, we think that it should be left to the legislature to change*

> *those boundaries, if they are to be changed, and to define the new ones.* This is not to say that there may not be some justice in the abstract sense in permitting recovery in cases such as the one before us. It is to say, however, that there are other powers than ours which are involved in the establishment of causes of action in Oregon and that the question involved in this case should be submitted to those other powers.

Norwest v. Presbyterian Intercommunity Hosp., 631 P.2d 1377, 1380 (Ore. App. Ct. 1981) (citation omitted) (emphasis added).

Accordingly, we decline to create a common law cause of action for loss of parental consortium in personal injury cases.

Finally, the appellants have raised for the first time in the appellate courts constitutional issues of due process and equal protection. These issues were not raised in the trial court, and the Attorney General was not notified and did not participate. The appellants have, therefore, waived these arguments on appeal. See Civil Serv. Merit Bd. v. Burson, 816 S.W.2d 725 (Tenn. 1991).

### Conclusion

We decline to adopt a common law cause of action for loss of parental consortium in personal injury cases and hold that the issue of whether to create such a cause of action is a matter of legislative discretion. We therefore affirm the Court of Appeals' judgment. Costs of the appeal are taxed to the appellants, Lindsay Taylor, Rachel Taylor, and Bradford Taylor, and their surety, for which execution may issue if necessary.

_____
E. RILEY ANDERSON, JUSTICE