JUSTICE McKINNON,
dissenting.
¶49 The Court begins from the proposition that “ ‘judicial modification of the common law is sometimes required to prevent great injustice or to insure the common law is consonant with the changing needs of society.’” Opinion, ¶ 21 (quoting Miller v. Fallon Cnty., 222 Mont. 214, 217-18, 721 P.2d 342, 344 (1986)). This is a noble statement. Our responsibility to “reform common law as justice requires,” Pence v. Fox, 248 Mont. 521, 524, 813 P.2d 429, 431 (1991), however, does not lead inevitably to the result reached by the Court today.
¶50 The Court relies heavily on precedent expanding the recognition of loss of consortium claims, which were historically available only to compensate a husband for injury to his wife. Opinion, ¶ 22. This analogy is inapt. The expansion of this cause of action to provide equal redress for women was based upon the mutual rights and obligations inhering in the marriage contract, recognized in statute, and further supported by legislative policy intended “to place husband and wife upon a parity.”Duffy v. Lipsman-Fulkerson & Co., 200 F. Supp. 71, 74 (D. Mont. 1961). Without question, the common law in many instances harbored great injustices against women, and courts were justified in *45 recognizing reforms “consonant with the changing needs of society.” Miller, 222 Mont, at 218, 721 P.2d at 344. With respect to the question we face today, however, “ ‘the reasoning supporting the recognition of the wife’s claim, to end an [ujnjust discrimination in the law, is not applicable to a child’s claim for loss of parental consortium.’ ” W.J. Bremer Co. v. Graham , 312 S.E.2d 806, 808 (Ga. Ct. App. 1983) (quoting DeAngelis v. Lutheran Med. Ctr., 84 A.D.2d 17, 26 (N.Y. App. Div. 1981), aff'd, 449 N.E.2d 406 (N.Y. 1983)). In relying generally on its authority to develop the common law, Opinion, ¶¶ 21-22, the Court misses the fact that substantially different social policies and historical circumstances justified the expansion of the cause of action to allow redress for wives as well as husbands.
¶51 The Court also mischaracierizes the relationship between the loss of consortium cause of action and its foundation in a pre-existing legal right, which was relied upon by the federal court in Duffy. 200 F. Supp. at 72-73. As the Court notes, Duffy looked to two elements defining a cause of action: a right on the part of the plaintiff, and the violation of that right by the defendant. Opinion, ¶ 23; 200 F. Supp. at 72. The court stated:
Turning then to the first element of a cause of action, the existence of a right in the plaintiff, it is clear under Montana law that a wife obtains certain rights by virtue of the marriage relationship. [Section] 48-101, R.C.M. 1947, provides that marriage is a personal relation arising out of a civil contract, to which the consent of parties capable of making it is necessary. [Section] 36-101, R.C.M. 1947, provides that upon entering into a marriage, the husband and wife contract toward each other obligations of mutual respect, fidelity and support. Thus the mutual rights which arise in the husband and wife upon marriage may be termed contractual rights or legal rights. It is also clear that included in these rights which arise upon marriage are rights which are embraced within the meaning of the term consortium
Duffy, 200 F. Supp. at 72-73 (emphasis added); see also Dillon v. Great N. Ry., 38 Mont. 485, 496, 100 P. 960, 963 (Mont. 1909) (cause of action sounding in tort “is composed of the right of the plaintiffand the wrong of the defendant”) (emphasis added).
¶52 The recognition of a cause of action requires the existence of a legal right, which the Duffy court found both in Montana’s statutes and in the marriage contract. 200 F. Supp. at 72-73. Two years later, the federal court again confronted the question, and again based its *46 recognition of the cause of action on existing statutory and common law rights. Dutton v. Hightower & Lubrecht Constr. Co., 214 F. Supp. 298, 300 (D. Mont. 1963). The Dutton court explained that the right of a husband to recover for the loss of his wife’s consortium existed in common law, and that those aspects of the common law denying a wife the same right had been changed by statute. 214 F. Supp. at 300-01. Neither Duffy not Dutton created new rights; they recognized rights existing at common law and the manner in which legislative action had altered the common law.
¶53 When this Court addressed the issue in 1986, it held "that the basis for a consortium claim lies in the Montana statutes in which the husband and wife contract for obligations of mutual respect, fidelity, and support,” again referring to rights existing at common law and in contract, and the specific recognition of those rights by the legislature. Bain v. Gleason, 223 Mont. 442, 445, 726 P.2d 1153, 1155 (1986) (citing § 40-2-101, MCA). Bain did not create “a legal right to the aid, protection, affection and society of the other spouse,” but acknowledged that such right already existed and thus deserved legal protection. 223 Mont, at 445, 726 P.2d at 1155.
¶54 In Pence, we were asked to address whether two minor children had a cause of action for loss of parental consortium when their father had been injured and rendered quadriplegic. 248 Mont, at 522, 813 P.2d at 403. In expanding the cause of action to parties other than spouses, we continued to rely on the existence of common law and statutoiy rights. Pence, 248 Mont, at 525-26, 813 P.2d at 432. Pence relied on § 40-6-211, MCA, which then stated: The parent or parents entitled to custody of a child must give him support and education suitable to his circumstances.”[1] 248 Mont, at 525, 813 P.2d at 432. Pence also recognized that this statute, like statutes governing marriage, codified pre-existing common law rights. 248 Mont, at 525-26, 813 P.2d at 432 ("Like the rights of a wife, the rights of the child to support, aid, protection, affection and society of the parent derive from both statute and case law.”) We later concluded that the parent need not be rendered quadriplegic in order for his or her minor children to claim loss of consortium. Keele v. St. Vincent Hosp. & Health Care Ctr., 258 Mont. 158, 161, 852 P.2d 574, 576 (1993). We continued to recognize that our expansion of the loss of consortium cause of action had its roots in both statutoiy and common law concepts: that is, upon *47 finding an existing statutory right, we appropriately recognized a cause of action allowing aggrieved parties to recover for the violation of that right. Pence, 248 Mont, at 525-26, 813 P.2d at 432. Our development of the common law was therefore based on existing legal rights. Though we recognized new claims allowing the enforcement of those rights, we did not create the rights themselves from whole cloth.
¶55 Each of the cases cited above addressed a common law loss of consortium claim based on non-fatal injuries to a spouse or parent. Another line of cases addresses damages for loss of consortium brought in the context of a statutory wrongful death action. Our consideration of the relationship between adults and their parents has been limited to the context of statutory wrongful death actions, until today. In Dawson v. Hill & Hill Truck Lines, 206 Mont. 325, 671 P.2d 589 (1983), we recognized that pursuant to our wrongful death statutes, parents were entitled to recover loss of consortium damages following the wrongful death of a minor child. Based on this decision, we later held that children, regardless of minority or majority, were entitled to recover loss of consortium damages following the wrongful death of a parent. Ewalt v. Scott, 206 Mont. 503, 675 P.2d 77 (1983). We based these holdings on our construction of § 27-1-323, MCA, which provides that in a wrongful death action, "such damages may be given as under all the circumstances of the case may be just.”
¶56 In Bear Medicine v. United States, 192 F. Supp. 2d 1053, 1067-68 (D. Mont. 2002), the federal court applied the holdings of Dawson and Ewalt to conclude that Montana law would likely allow a parent to recover loss of consortium damages following the death of an adult child.[2] In Renville v. Frederickson, 2004 MT 324, ¶¶ 22-23,324 Mont. 86, 101 P.3d 773, we concluded that a mother was not the proper party to bring a wrongful death action because she was not the personal representative of her adult son’s estate, but affirmed that "loss of consortium and loss of comfort and society damages are examples of *48 ‘just’ damages available in wrongful death actions,” referring again to our interpretation of § 27-1-323, MCA.
¶57 In Hern v. Safeco Insurance Co. of Illinois, 2005 MT 301, ¶ 48, 329 Mont. 347, 125 P.3d 597, we again addressed a wrongful death action, as we had done in Renville and as the federal court had done in Bear Medicine. The mother of the deceased adult in that case argued that “§ 27-1-323, MCA recognizes a broad range of damages ‘as under all the circumstances of the case may be just.’ ” Hern, ¶ 49. Following the lead of the federal court in Bear Medicine, which relied on Backing Woman’s role as a spiritual leader within his tribe and his contributions to running his parents’ ranch, we concluded that the parent of a deceased adult could claim loss of consortium damages where there existed “significant evidence of an extraordinarily close and interdependent relationship.” Hern, ¶¶ 52-58.
¶58 The Court is simply wrong when it states that “[n]either Bear Medicine nor Hem relied on statutes to establish a legal right to consortium ... .” Opinion, ¶ 28. Both Bear Medicine and Hern were wrongful death actions, and therefore relied on the wrongful death statutes. Sections 27-1-323, -513, MCA. Unlike a common law loss of consortium claim resulting from a non-fatal injury, “[a] cause of action for wrongful death is a legislative creation.” Renville, ¶ 25. Bear Medicine and Hern interpreted and applied our wrongful death statutes, as enacted by the legislature, to determine what damages were “just” in those cases. Sections 27-1-323, -513, MCA.
¶59 We have been asked to decide whether an adult may bring an independent common law claim for loss of consortium resulting from non-fatal injuries to her father. In so deciding, we may not rely on the breadth of our wrongful death statutes, but must return instead to those cases addressing the availability of the cause of action under the common law. Those cases have allowed claims for loss of consortium to be brought only by spouses or minor children. See Dutton, 214 F. Supp. at 299-300; Duffy, 200 F. Supp. at 72; Keele, 258 Mont, at 159, 852 P.2d at 575; Pence, 248 Mont, at 522, 813 P.2d at 430; Bain, 223 Mont, at 445, 726 P.2d at 1155. Recognition of a claim by an adult for the loss of consortium with his or her parent is not “a natural extension of Montana’s common law.” Opinion, ¶ 32. Rather, it is a distinct departure from the logic that has governed our previous analysis.
¶60 Our precedent, until now, has followed the approach outlined by the federal court in Duffy: in recognizing a new cause of action, we have first looked for an existing right on the part of the plaintiff. 200 F. Supp. at 72 ;Dillon, 38 Mont, at 496, 100 P. at 963. In Duffy, Dutton, *49 and Bain, that right was found to inhere in the marital obligation and attendant rights, as recognized both at common law and by statute. Dutton, 214 F. Supp. at 300; Duffy, 200 F. Supp. at 72-73; Bain, 223 Mont, at 445, 726 P.2d at 1155. In Pence and Keele, that right was found in the legal obligation of a parent to support his or her child, existing both at common law and in statute. Keele, 258 Mont, at 161, 852 P.2d at 576; Pence, 248 Mont, at 526, 813 P.2d at 432.
¶61 The Court departs from this precedent by premising its recognition of a new cause of action on a relational interest, rather than a legal one. The Court cites no authority establishing the right of an emancipated adult to receive the aid, protection, affection, and society of a parent. While minor children have a right to receive care necessary for their emotional well-being, In re C.M.S., 187 Mont. 115, 122-24, 609 P.2d 240, 243-45 (1979), an adult has no similar right to be provided with affection, advice, or other benefits conducive to emotional well-being. An adult has no legal right to be supported, whether emotionally or financially, by his or her parent. See In re Marriage of Haberkern, 2004 MT 29, ¶ 20, 319 Mont. 393, 85 P.3d 743 (In Montana, parental obligation to support minor children ends when a child reaches the age of majority....”). This can be a harsh reality, as many young adults discover, but it is no less true for that. The Court recognizes that we have no statutes "directly on point” which would establish such a right or obligation. Opinion, ¶ 30 (citing §§ 40-6-214, -301, MCA, establishing obligations of support between parents and adult children limited to circumstances of indigence or disability). Instead, the Court broadly states, with no support in Montana law, that" ‘even adult and married children have the right to expect the benefit of good parental advice and guidance.’ ” Opinion, ¶ 29 (quoting Audubon-Exira Ready Mix, Inc. v. Ill. Cent. & Gulf R.R., 335 N.W.2d 148, 152 (Iowa 1983)). They may well expect it, but in Montana they have no existing legal right to it.
¶62 By contrast, in Iowa, a statute provides that in cases of “wrongful or negligent iiyury or death,” damages may be recovered for “the value of services and support as spouse or parent, or both ... .” Iowa Code § 613.15 (2013). It is this provision that the Iowa Supreme Court relied on in allowing a child to recover damages for loss of parental consortium in cases of non-fatal injury. Audubon-Exira Ready Mix, Inc., 335 N.W.2d at 151-52. The Iowa Supreme Court did not create a new right simply because it valued the parent-child relationship. Rather, it interpreted the language of § 613.15 and found it did not limit the availability of damages to the period of a child’s minority, and *50 in so doing, it actually retracted previous recognition of a child’s independent common law claim for loss of parental consortium. Audubon-Exira Ready Mix, Inc., 335 N.W.2d at 152. The court relied on public policy to support its statutory interpretation. Audubon-Exira Ready Mix, Inc., 335 N.W.2d at 152. Our pronouncements about the “enduring nature of the parent-child relationship,” Opinion, ¶ 32, serve no similar purpose, as we have no applicable statute — outside the context of a wrongful death — to interpret.
¶63 While the Court cites a “national trend” in support of expanding recognition of claims for loss of consortium, Opinion, ¶ 32, the majority of jurisdictions do not allow an adult to bring a claim for loss of consortium with his or her injured parent. See 131 Am. Jur. Proof of Facts 3d Loss of Consortium in Parent-Child Relationship § 4 (2013). The Concurrence observes that “there appear to be relatively few recent court decisions that decide the issue one way or the other.” Concurrence, ¶ 41. Indeed, only five jurisdictions have decisively concluded that an adult may bring a cause of action or claim damages for loss of consortium when his or her parent is severely injured. See Audubon-Exira Ready Mix, Inc., 335 N.W.2d at 152; Rolf v. Tri State Motor Transit Co., 745 N.E.2d 424, 427-28 (Ohio 2001);Nelson v. Four Seasons Nursing Ctr., 934 P.2d 1104, 1105 (Okla. Civ. App. 1996); Reagan v. Vaughn, 804 S.W.2d 463, 466 (Tex. 1990); Ueland v. Pengo Hydra-Pull Carp., 691 P.2d 190, 195 (Wash. 1984).[3] An equal number have specifically denied an adult’s right to bring a cause of action for *51 loss of consortium with an injured parent. See Lewis v. Rowland, 701 S.W.2d 122, 124 (Ark. 1985); Natalini v. Little, 92 P.3d 567, 570 (Kan. 2004); Smith v. Vilvarajah, 57 S.W.3d 839, 841 (Ky. Ct. App. 2000); Mendoza v. B.L.H. Electronics, 530 N.E.2d 349, 350 (Mass. 1988) (declining to extend cause of action to adult stepchildren); Theama v. City of Kenosha, 344 N.W.2d 513, 522 (Wisc. 1984). The Concurrence fails to observe the large number of jurisdictions in which an adult’s cause of action for loss of parental consortium is unlikely ever to be addressed, because the same cause of action by a minor child has already been rejected. See Borer v. Am. Airlines, 563 P.2d 858, 860-61 (Cal. 1977); Lee v. Colo. Dept. of Health, 718 P.2d 221, 234 (Colo. 1986); Mendillo v. Bd. of Educ., 717 A.2d 1177, 1226 (Ill. App. Ct. 1985); Dearborn Fabricating & Eng'g Corp. v. Wickham, 551 N.E.2d 1135, 1139 (Ind. 1990); Durepo v. Fishman, 533 A.2d 264, 264 (Me. 1987); Monias v. Endal, 623 A.2d 656, 661 (Md. 1993); Salin v. Kloempken, 322 N.W.2d 736, 737 (Minn. 1982); Thompson v. Love, 661 So. 2d 1131, 1131-32 (Miss. 1995);Powell v. Am. Motors Corp., 834 S.W.2d 184, 186 (Mo. 1992); Guenther v. Stollberg, 495 N.W.2d 286, 289 (Neb. 1993); Gen. Elec. Co. v. Bush, 498 P.2d 366, 371 (Nev. 1972); Harrington v. Brooks Drugs, 808 A.2d 532, 534 (N.H. 2002); Russell v. Salem Transp. Co., 295 A.2d 862, 863 (N.J. 1972); DeAngelis, 449 N.E.2d at 407; Vaughn v. Clarkson, 376 S.E.2d 236, 238 (N.C. 1989); Butz v. World Wide, Inc., 492 N.W.2d 88, 93 (N.D. 1992); Norwest v. Presbyterian Intercommunity Hosp., 652 P.2d 318, 319 (Ore. 1982); Steiner v. Bell Tel. Co., 517 A.2d 1348, 1349 (Pa. Super. Ct. 1986); Taylor v. Beard, 104 S.W.3d 507, 511 (Tenn. 2003). In an additional three states, the parties who may claim loss of consortium damages in cases of nonfatal injury are limited by statute and do not include emancipated adults, see Fla. Stat. § 768.0415 (2014); R.I. Gen. Laws § 9-1-41 (2014); S.C. Code Ann. § 15-75-20 (2013), and one state, Utah, recognizes no independent causes of action for loss of consortium, Boucher v. Dixie Med. Ctr., 850 P.2d 1179, 1184-85 (Utah 1992). In all, an adult’s cause of action for loss of consortium with an injured parent is precluded in 30 states. This is not an undeveloped area of law in which persuasive authority is lacking. The "trend” referred to by the Opinion, ¶ 32, and the "legal commentary” cited by the Concurrence, ¶ 41, are decidedly in the minority.
¶64 Furthermore, the decisions of other states cited by the Court do not necessarily support its position. As noted, the Iowa Supreme Court relied on a statutory right to recover damages for loss of parental *52 services and support. Audubon-Exira Ready Mix, Inc., 335 N.W.2d at 152. In fact, the court later declined to allow the parents of a deceased adult to bring an independent cause of action for loss of consortium or to claim loss of consortium damages in their wrongful death suit, in the absence of an existing statutory or common law right. Kulish v. W. Side Unlimited Corp., 545 N. W.2d 860, 862-63 (Iowa 1996). Two of the cases which the Court notes we relied on in Pence, Hibpshman v. Prudhoe Bay Supply, Inc., 734 P.2d 991, 997 (Alaska 1987), and Villareal v. Arizona Department of Transportation, 774 P.2d 213, 215 (Ariz. 1989), addressed only claims brought by minor children, and are not persuasive in our consideration of a claim brought by an adult.
¶65 The Court also cites a Tennessee case, Jordan v. Baptist Three Rivers Hospital, 984 S. W.2d 593,596 (Tenn. 1999), which interpreted that state’s wrongful death statutes, but fails to observe that the Jordan court “expressed] no opinion as to whether the loss of parental consortium may be recovered in personal injury actions in which the parent or parents survive.” Indeed, in a later case, the Tennessee Supreme Court “declinetd] to create a common law cause of action for loss of parental consortium in personal injury cases.” Taylor, 104 S.W.3d at 511. In so doing, the court reasoned:
In our view, the appellants do not simply request that we remove an impediment to the continual development of the common law, nor do they ask us to interpret an ambiguous statutory or constitutional provision. Rather, the appellants ask this Court to declare the public policy of this State by creating a previously unrecognized common law cause of action in an area where the legislature has taken action.
Taylor, 104 S.W.3d at 510-11.I believe we face the same circumstance in this case. Because I can find no existing legal right which has been violated, Duffy, 200 F. Supp. at 72,I do not join the Court in declaring that an adult may bring a cause of action for the loss of consortium with his or her injured parent.
¶66 In addressing whether an adult has a cause of action in such circumstances, the Concurrence observes that independent loss of consortium claims "spring from the common law,” and thus do not require the existence of a statutory right. Concurrence, ¶ 39. Any cause of action, however, requires a legal right on the part of the plaintiff. Dillon, 38 Mont, at 496, 100 P. at 963. Sadee Stucky’s cause of action for loss of parental consortium does not have to be founded on a statute, but it does have to be founded on a legal right to the affection and society of her father. A minor child has a legal right to receive *53 emotional and physical care from a parent. C.M.S., 187 Mont, at 122-24, 609 P.2d at 243-45. A spouse has a legal right to the aid, protection, affection and society of the other spouse. Bain, 223 Mont, at 445, 726 P.2d at 1155. An adult — even a young adult — has no legal right to continue to receive the affection and society of a parent. Parental support is nice to have, but it is not a legal entitlement. The “inherent filial right” referred to by the Concurrence, ¶ 47, is not found anywhere in our law. Absent a legally cognizable right, a cause of action cannot be stated. Dillon, 38 Mont, at 496, 100 P. at 963.
¶67 The Concurrence states that “there are significant legal and policy reasons” to allow an adult to bring a cause of action for loss of consortium with an injured parent. Concurrence, ¶ 39. Despite this assertion, the Concurrence provides no Montana precedent establishing the legal right at issue. Instead, the Concurrence cites “legal commentary” favoring increased recognition of children’s rights. Concurrence, ¶¶ 40, 43, 46. Children’s rights are not at issue here. There is no impediment to the ability of an eighteen-year-old woman to bring a legal action, provided she has suffered legal injury.
¶68 To that end, the Concurrence also cites cases and commentaiy stating that injured persons should be compensated for their losses. Concurrence, ¶ 45. The sources cited, however, refer to persons who have been directly injured. When we are asked to define the category of injured persons, it does not advance that inquiry to state that an injured person is entitled to compensation. Liability must end somewhere; a fine must be drawn. In recognizing an “inherent filial right” rather than a legally cognizable one, we blur this line to the point where it may no longer exist. As the Connecticut Supreme Court has recognized:
In the constellation of family relationships, there are other formally recognized relationships — e.g., siblings, grandparent and grandchild, and aunt or uncle and nephew or niece — and others, less formally recognized but nonetheless just as real in an emotional sense — e.g., stepsiblings, and stepchild and stepparent — that could well, depending on the case, present equally strong claims of loss of consortium.
Mendillo, 717 A.2d at 1191. Following our decision today, can we draw any coherent distinction between these relationships in future cases, when a loved one claims an “inherent right” to the society of an injured person?
¶69 In its broad statements about the function of loss of consortium claims to address “injuries to emotional well-being,” the Concurrence *54 seems to suggest that every instance of grief or sadness, by definition it would seem, presents a legally cognizable injury. Concurrence, ¶ 42. There is no generalized right to emotional well-being. We have recognized that “[t]he loss of or serious injury to a child, whether an adult or a minor, is no doubt a traumatic experience, but it is one experienced by countless parents every year.” Renville, ¶ 15. In spite of this, “ “life goes on.’ ” Renville, ¶ 15. The same is true when a young adult experiences the loss of or serious injury to a parent.
¶70 As far as the “policy reasons” alluded to, the Concurrence concludes that “the law should not impose such an artificial extinguishment when it comes to the inherent filial right to a parent’s affection, aid, and society.” Concurrence, ¶ 47. Yes, the age of majority is a legal concept, arbitrarily set at 18 years rather than 19,16, or 21. That is not, in itself, reason to deprive it of legal significance. The Concurrence advocates a policy of indefinite childhood. This, too, is bad policy. The law should promote independence in young adults, rather than vesting in them the legal right to have a parent attend to their intangible needs.
¶71 I feel sympathy for Sadee Stucky and her family, and I admire the close relationship Calvin Stucky built with his daughters. Embarking on an independent adult life is a challenging endeavor, and without question, Sadee’s path has been made even more challenging by this family hardship. Absent a legally cognizable right, however, I do not believe this Court should create a new cause of action simply to fit the present circumstances.
¶72 If the Court is to recognize such a cause of action, I believe we must clearly define the evidentiaiy standard to be applied. We must first recognize the distinction between the evidentiary standards we have applied to independent causes of action for loss of consortium and those for determining “just” damages pursuant to the wrongful death statute. In Keele, we held that a minor child bringing a cause of action for loss of consortium with an injured parent must establish that the parent has suffered a serious, permanent and disabling mental or physical injury compensable under Montana law, and that the parent’s ultimate condition of mental or physical impairment must be so overwhelming and severe that it causes the parent-child relationship to be destroyed or nearly destroyed. 258 Mont, at 162, 852 P.2d at 577. Keele required no proof of the nature of the relationship between parent and child, only the degree of injury. This was appropriate because the child was a minor, and close dependence could therefore be presumed. In Hern, we held that a parent claiming damages for loss *55 of consortium with a deceased adult child in a wrongful death action must present significant evidence of an extraordinarily close and interdependent relationship, Hern, ¶ 58. Hern required no proof of the degree of injury or harm to the relationship. Again, this was appropriate because in a wrongful death, there could be no question that the relationship was destroyed.
¶73 In this case, the party claiming loss of parental consortium is not a minor child, and so a relationship of close dependence cannot be presumed. Similarly, because the injuries are non-fatal, we must require proof of the degree of injury and the resulting damage to the parental relationship. In short, neither the Keele standard nor the Hern standard is appropriate on its own. The Opinion claims to adopt the Keele standard, but in addition to requiring the two elements stated under Keele, states that “the plaintiff may present evidence of factors including... the actual effect the parent’s injury has had on the relationship and is likely to have in the future; the child’s age; the nature of the child’s relationship with the parent; and the child’s emotional, physical, and geographic characteristics.”[4] Opinion, ¶ 38 (emphasis added). In Hem, we recognized that consideration of the nature of the relationship between an adult and his or her parent was necessary when addressing a claim for loss of consortium damages. The Court seems to find that consideration appropriate here, to some degree — but doesn’t actually require any evidence of the nature of the relationship, and provides no guidance on the minimum showing a plaintiff must make to have the cause of action presented to a jury. Opinion, ¶ 38.
¶74 The “standard” enunciated by the Court is not only legally confusing and inadequate, it draws a wholly unsupported distinction between the rights of a parent and the rights of an adult son or daughter in identical circumstances. The Court rejects the Hem standard, which we have already applied to the relationship between an adult and his or her parent in the context of a wrongful death action. Opinion, ¶¶ 35-36. Instead, the Court claims to apply the standard we set out for an independent loss of consortium claim by a minor child in Keele, concluding there is “no reason to adopt a different standard” when the plaintiff is an adult. Opinion, ¶ 36. The Court reasons that “it is only the age of the child that is different,” Opinion, ¶ 36, inexplicably ignoring the fact that age is precisely what makes *56 the difference, legally, between a child and an adult. Section 41-1-101, MCA. It is not “only the age of the child” at issue: it is the fact that at a certain age, one is no longer a child. Under the law, that is reason enough to adopt a different standard. See, e.g., Mode v. Barnett, 361 S.W.2d 525, 530 (Ark. 1962) (“The adult child who loses a parent is generally better able to withstand the blow than a minor child whose close and constant association with the parent in the home creates considerably more of a binding tie.”); Smith, 57 S.W.3d at 843 (“[Tjhere is a legitimate basis for limiting recovery for loss of parental consortium to minor or unemancipated children.”); Theama, 344 N.W.2d at 522 (“[T]he minor is one whose relationship is most likely to be severely affected by a negligent injury to the parent.”).
¶75 The Court declares that “an adult child’s reliance on a parent for guidance and support is likely different from the parent’s reliance on a child that we discussed in Hern. No ‘extraordinarily close and interdependent relationship’ is required for an adult child to be harmed, or even devastated, by the effective loss of a close parent-child relationship.” Opinion, ¶ 38. Setting aside the circuitous statement that a close relationship is not required for one to be devastated by the loss of a close relationship, the Court implies that a parent is comparably unlikely to be devastated by the loss of a close relationship with an adult son or daughter. The Court presents no support for this assertion. I find equal arguments to the contrary: in the course of life, it is natural and expected that one will eventually suffer the loss of one’s parents. It is not expected, at any age, that one will lose a child. It is not for this Court to categorically declare one loss more devastating than the other.
¶76 In defining the standard to govern an adult’s cause of action for loss of consortium with a non-fatally injured parent, if the Court should recognize such a cause of action, I would uphold the standard we have previously applied to the parent-child relationship when it exists between two adults, and require evidence of an extraordinarily close and interdependent relationship. Hern, ¶ 58. Because a non-fatal injury is involved, I would also require proof that the parent has suffered a serious, permanent and disabling mental or physical injury compensable under Montana law, and that the parent’s ultimate condition of mental or physical impairment must be so overwhelming and severe that it causes the parent-child relationship to be destroyed or nearly destroyed. Keele, 258 Mont, at 162, 852 P.2d at 577. Requiring the plaintiff to demonstrate the severity and genuineness of his or her injury as a threshold matter is also consistent with our *57 approach to causes of action for other intangible injuries, such as emotional distress. See Sacco v. High Country Indep. Press, 271 Mont. 209, 232, 896 P.2d 411, 425 (1995).
¶77 For the reasons stated above, I dissent.

 Section 40-6-211, MCA, now reads: “The parent or parents of a child shall give the child support and education suitable to the child’s circumstances.”

 In Bear Medicine, Leland Kicking Woman was injured in a logging accident and died nine months later as a result of those injuries. 192 F. Supp. 2d at 1060. Under these facts, I admit it may he unclear, on a first reading, whether the court awarded loss of consortium damages to Kicking Woman’s parents for the period during which he survived, but was severely injured, or for his wrongful death. This ambiguity is resolved by the court’s statements that “[floss of consortium damages are recoverable in wrongful death cases and are appropriate under the facts of this case,” and “[l]oss of consortium damages compensate the plaintiff for the loss ofcare, comfort, society and companionship of the decedent.” Bear Medicine, 192 F. Supp. 2d at 1070 (emphasis added).

 The Concurrence cites Brooks v. Harley-Davidson Motor Co., 2009 U.S. Dist. LEXIS 74867 at *10 (E.D. Pa. Aug. 21, 2009), which observed that six states had recognized such a claim. One of the states referred to, Arizona, recognized a child’s claim for loss of parental consortium in a consolidated appeal involving several families. Villareal v. Ariz. Dept. of Transp., 774 P.2d 213 (Ariz. 1989). One of these, the VillarealGarcia family, included an adult daughter claiming loss of parental consortium with her injured father. The Villareal-Garcia family Bettled before the appeal was resolved, and thus the Arizona Supreme Court stated that its holding would apply only to the Newman and Fuentes children, who were minors. Villareal, 774 P.2d at 219-20. The Arizona Supreme Court reasoned that recognizing the cause of action was consistent with “increased recognition and awareness of children as persons with rights,” a consideration irrelevant to recognition of an adult’s claim. Villareal, 774 P.2d at 217. Additionally, in Hawaii, the United States District Court has surmised that the Hawaii Supreme Court would likely overturn a 1957 case and allow an adult’s claim for loss of parental consortium in cases of non-fatal injury. Marquardt v. United Airlines, Inc., 781 F. Supp. 1487, 1491 (D. Haw. 1992). The Hawaii Supreme Court has not yet acted. For these reasons, I cannot with confidence say that either Arizona or Hawaii recognizes the cause of action.

 The “geographic characteristics” of the plaintiff presumably refer to “where the plaintiff physically resides in relation to the injured parent.”